STATE of Missouri, Respondent,

v.

James R. BISHOP, Appellant.

No. 63188.

Supreme Court of Missouri,
Division No. 1.

May 11, 1982.

Paul Crider, Jr., Kansas City, for appellant.

Kelly Klopfenstein, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Senior Judge.

Defendant was charged by amended information with burglary in the first degree, robbery in the first degree, kidnapping, and attempted robbery. He gave notice of his intent to rely on the defense, authorized by § 562.076, RSMo, that he was in a drugged condition which was involuntarily produced and which deprived him of the capacity to appreciate the wrongfulness of his conduct or to conform it to the requirements of the law. On that basis defendant asserted that he was not criminally responsible for his conduct.

Defendant waived his right to trial by a jury and the cause was heard by the court. It found defendant guilty of burglary in the first degree, robbery in the first degree, and kidnapping but not guilty of attempted robbery. In so holding it found that the evidence did not establish that defendant's use of drugs prior to committing the offense was involuntary as required by the statute to constitute a defense. The court

further found from the evidence that defendant formed an intent to commit the offenses in question. Therefore, concluded the court, § 562.076 did not provide a defense for defendant herein.

The court assessed punishment at fifteen years on the conviction of burglary in the first degree, fifteen years on the conviction of robbery in the first degree, and life imprisonment on the conviction of kidnapping. The three sentences were made concurrent. We affirm.

The single issue raised on appeal is that the trial court erred in finding that § 562.076 was inapplicable to the facts of this case and did not excuse defendant. Accordingly, we recite the evidence only to the extent necessary to an understanding of that issue.

The evidence would support a finding that during the early hours of July 25, 1980, the defendant entered the Skaggs Drug Center at 75th and Wornall in Kansas City by means of a hole which he made in the roof of the store. He carried with him a briefcase which contained burglary tools, a gun and a police scanner. Subsequently, Edwin Ladd and Kerry Berten, employees of Skaggs, arrived to open the store. Upon entry, they discovered defendant in the store. Defendant held the employees hostage for some time, during much of which period he held his gun pointed against the back of Ladd's head. He forced Ladd to open the store safe and hand over the money and drugs which were in the safe.

Kerry Berten managed to escape from the store after about an hour. Police were alerted and during the morning three of them entered the store. Defendant ordered the officers to leave, stating that if they did not he would kill Ladd. Later, as defendant was exploring possible avenues of escape, Ladd succeeded in escaping from the store. Defendant thereafter returned to the roof and, on orders of the police, descended from the roof and was captured.

At the trial, defendant testified that prior to going to and entering the Skaggs store he obtained and took certain drugs by injection. He said that he was addicted to those drugs and had been for about a year

and a half. He stated that he took the drugs because he needed them to maintain what he had—an ability to deal with something within him. His girl friend and Dr. Neese, D.O., his family doctor, also testified that he was addicted to certain drugs. Dr. Neese stated that when defendant took these drugs, it was an act of compulsion because he was addicted and that with the dosage and addiction, he could "not very well" conform his behavior to the requirements of the law.

The state offered the testimony of Dr. Zwerenz, a psychiatrist, who testified that defendant understood the nature of his actions and was cognizable of the law and its consequences at the time of his offenses at the Skaggs store.

The statute on which defendant bases his defense reads as follows:

"562.076. Intoxicated or Drugged Condition

1. A person who is in an intoxicated or drugged condition whether from alcohol, drugs, or other substance, is criminally responsible for conduct unless such condition

(1) Negatives the existence of the mental states of purpose or knowledge when such mental states are elements of the offense charged or of an included offense; or

(2) Is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct or to conform his conduct to the requirements of law.

2. The defendant shall have the burden of injecting the issue of intoxicated or drugged condition."

Defendant relies on subparagraph 1(2) of that statute. It is defendant's theory that when one becomes addicted to a drug, the taking of such drug is a matter of necessity and it is taken under compulsion rather than voluntarily. Therefore, says defendant, the drugged condition of the addict is involuntarily produced within the meaning of § 562.076.1(2) and the addict is not criminally responsible for conduct under such

circumstances when, as he contends here, such condition deprived him of the ability to conform his conduct to the requirements of the law.

Is the drugged condition of a defendant "involuntarily produced" within the meaning of the statute merely because the defendant taking the drugs is a drug addict? This necessarily involves a determination of the meaning of the statutory language which states that a person is criminally responsible for conduct "unless such condition * * * (2) Is involuntarily produced * * *".

Section 562.076 is part of a new criminal code which was enacted in 1977.[1] Like other sections of that code, it is followed in V.A.M.S. with editorially selected comments which were prepared by the drafting committee, known as the Committee to Draft a Modern Criminal Code. The comment which follows § 562.076 recites that it is based on Model Penal Code § 2.08 and on provisions of the laws of New York, Michigan, Illinois and Kansas. It then states:

"This section deals with both 'voluntary' and 'involuntary' intoxication. It first states the unanimously accepted doctrine that intoxication, no matter what the cause—whether it be alcohol, drugs or something else—does not in and of itself affect criminal liability; or, in other words, drunkenness is no excuse for crime.

"Subdivisions (1) and (2) to subsection 1 set forth the two situations where intoxication can affect criminal liability: where the intoxication is of such a degree that it negatives an essential mental state required for guilt of the particular offense and where the intoxication is 'involuntary' and is of such a degree as to render the individual irresponsible.

" * * *

"Subsection 1(2) states the commonly accepted view as to 'involuntary' intoxication, that it is a complete defense provided the individual is rendered irresponsible as judged by the same standards applicable to lack of responsibility be-

cause of mental disease or defect. See Perkins, Criminal Law 894 (2nd ed. 1969) and LaFave & Scott, Criminal Law 341 (1972)."

The foregoing comment does not define or discuss what is meant by "involuntary" intoxication. However, its reference to § 2.08 of the American Law Institute's Model Penal Code, the statutes of other states, and certain textbooks provides some guidance in interpreting the language used in subsection 1(2).

Section 2.08 of the Model Penal Code provides that intoxication (from alcohol or other substances) is not a defense unless it negatives an element of the offense charged or the intoxication is not self-induced or it is pathological. We are concerned with the part of § 2.08 which provides an exception if the intoxication is not self-induced. Comments on § 2.08 are contained in Tentative Draft No. 9 (1959) of the Model Penal Code., commencing on page 2. Pertinent to the issue of whether use of drugs by an addict is voluntary or involuntary is the following sentence at page 12:

" . . . Narcotic addicts may resort to crime to obtain certain funds for drugs to prevent withdrawal symptoms and when they do they are, of course, held accountable . . . "

The foregoing comment indicates that the drafters of § 2.08 did not contemplate that drug addicts would be excused on the theory that their use of drugs was not self-induced.

This conclusion as to the intended meaning and effect of § 2.08 is confirmed in LaFave & Scott, Criminal Law (1972), cited in the comment to § 562.076. At p. 350, in a section which discusses "voluntary" and "involuntary" intoxication, appears this discussion of narcotics addiction:

"What then of the narcotics addict who resorts to crime in order to obtain funds for drugs to prevent withdrawal symptoms? This is a more serious problem, in the sense that a great many crimes are

---

1. L.1977, SB No. 60, p. 662, § 1, eff. Jan. 1, 1979.

committed under precisely these circumstances. Although it certainly could be argued that such a person is in need of treatment for his addiction rather than punishment for the crime committed to support it, there is no discernible trend toward recognizing a defense in such a case."

In a footnote (No. 69) to the quoted paragraph, the authors note that the comment to Model Penal Code § 2.08, set out in Tentative Draft No. 9, makes it clear that the code did not result in a change in the law where drug addicts are involved.

As previously noted, the comment in V.A.M.S. which follows § 562.076 also indicates that in drafting that section the committee looked to statutes of New York, Michigan, Illinois and Kansas. We have examined the laws of each of those states which deal with the question of whether and to what extent intoxication is a defense to a criminal charge. We find nothing in that examination which causes us to conclude that those statutory provisions are intended to provide that the taking of drugs by a drug addict produces intoxication which is involuntarily produced so as to provide a defense if it has the effect of depriving the defendant of the capacity to appreciate the wrongfulness of his conduct or to conform it to the requirements of the law.

The New York statute (New York Penal Code, § 15.25) says nothing about involuntary intoxication. However, in *People v. Borrero*, 19 N.Y.2d 332, 280 N.Y.S.2d 109, 111, 227 N.E.2d 18 (C.A.1967) the New York Court of Appeals said:

The defendants in the cases before us were not convicted for being drug addicts or even for narcotic offenses but rather for petit larceny and attempted grand larceny * * *. Although in extreme cases drug addiction can render its victims incompetent—i.e., 'incapable' of committing crime—and absolve them from criminal responsibility * * * 'mere * * * narcotics addiction will not', as the Court of Appeals for the Second Circuit recently observed, 'of [itself] justify ac-

quittal." *United States v. Freeman*, 357 F.2d 606, 625 [2nd Cir.], supra; * * *."

The Michigan statute (Michigan Second Revised Criminal Code, § 710) excuses a person from criminal responsibility if he is involuntarily intoxicated and such condition results in lack of capacity to appreciate wrongfulness of conduct or to conform conduct to requirements of the law. However, that statute specifically defines involuntary intoxication and provides that one under the influence of an intoxicant voluntarily consumed or injected is not involuntarily intoxicated even though addicted thereto.

The Illinois statute (S.H.A. ch. 38, § 6–3) is almost identical to § 562.076. It has been construed in *People v. Quinn*, 360 N.E.2d 1221, 46 Ill.App.3d 579 (5th Dist. 1977) as follows, 360 N.E.2d at 1224:

"Defendant also maintains that his intoxication was involuntary and thus operates as a defense under Section 6–3 of the Criminal Code (Ill.Rev.Stat.1975, ch. 38, par. 6–3) because it deprived 'him of [the] substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirement of law.' The basis for his contention that his intoxication was involuntary was evidence that he had been treated as a chronic alcoholic. Illinois courts have stated that involuntary intoxication can only be caused by trick, artifice or force. (*Bartholomew v. People* (1882), 104 Ill. 601; *People v. Walker* (1975), 33 Ill. App.3d 681, 338 N.E.2d 449). No case has been cited permitting involuntary intoxication to be proved by chronic alcoholism."

The Kansas statute (K.S.A. 21–3208) states essentially the same thing as § 562.-076. This statute was construed in *State v. Polacio*, 559 P.2d 804, 221 K. 394 (Kan.1977), wherein defendant was convicted of voluntary manslaughter and contended on appeal that the court should have instructed the jury on involuntary intoxication, pursuant to K.S.A. 21–3208. In overruling that contention, the Kansas Supreme Court stated, 559 P.2d, l.c. 806:

"The trial court gave instructions to the jury on voluntary intoxication pursuant to K.S.A. 21–3208(2) and on intent, but refused to give an instruction on involuntary intoxication. In its oral ruling upon the request for such an instruction, the court said:

'. . . After reading [*State v. Seely*, 212 Kan. 195, 510 P.2d 115, and *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254] I . . . hold that [K.S.A.] 21–3208 was not an expression by the legislature of an intent to . . . carve a category of individuals who were immune to prosecution for their criminal conduct because of their addiction to any drug or narcotic including alcohol . . .

.      .      .      .      .      .

'To be involuntarily intoxicated . . . a person must either have become intoxicated unknowingly either by accident or by the act of another without the knowledge of the person who became intoxicated, or else must have had a sufficient mental defect or impairment that he or she, while becoming intoxicated [was] not aware of the consequences of their actions in so doing. And it is the ruling of this Court that any person, including the chronic alcoholic who, as in the case before the Court at the present time, was shown to be sane and rational when sober, and who thereafter became intoxicated by consuming alcoholic beverages . . . is voluntarily intoxicated within the meaning of [K.S.A.] 21–3208 . . . rather than involuntarily intoxicated. And the Court is specifically rejecting the notion that an alcoholic may be under a sufficient desire for alcohol . . . that he will be compelled by that addiction to consume or absorb the same to the point of intoxication . . .

'. . . [T]he evidence submitted to support the theory that the defendant was involuntarily intoxicated does not support such theory, but in fact shows that he was voluntarily intoxicated as this Court interprets [K.S.A.] 21–3208'.

"Defendant places primary reliance upon the case of *State v. Seely*, supra, wherein we said:

'. . . [B]efore intoxication may be said to be 'involuntary' a defendant must show an irresistible force, which is something more than a strong urge or 'compulsion' to drink . . .' (212 Kan. p. 202, 510 P.2d 121.)

"Defendant contends that the evidence before the court established that he was thus compelled by an 'irresistible force' to partake of alcoholic beverages, that his intoxication was therefore involuntary, and that the court erred in failing to so instruct the jury. We disagree.

"[1, 2] The 'irresistible force' mentioned in *Seely* does not mean habit, desire, or any other type of *internal* compulsion. It means that intoxicants or drugs were forcibly, unwittingly or unknowingly ingested by or administered to the defendant. 'Irresistible force' means physical compulsion by another, trickery, deception, or other type of *external* force. As a matter of law, the defendant, a chronic alcoholic but a person of average intelligence and mental capacity and whose actions were rational when he was sober, was not involuntarily intoxicated. The district court was correct in its interpretation of the law and in the instructions which it gave to the jury."

Based upon our examination of the provisions of § 562.076, and of its sources as disclosed by the comment which follows it, we conclude that the section was not intended to and does not provide that a drugged condition of an addict, resulting from self-administered drugs, is an involuntarily drugged condition.

▮▮▮ We hold that the trial court did not err in holding that the evidence did not establish a defense under § 562.076. The only evidence to explain defendant's actions in administering the drugs to himself was the fact that he was addicted and took the drugs to maintain his condition. The court was justified in holding that the fact that defendant was addicted to the drugs which he took did not establish that his drugged

condition was involuntarily produced. The court also was justified under the evidence in finding that defendant had formed an intent to commit the offenses in question.

Judgment affirmed.

BARDGETT, Acting P. J., RENDLEN, J., and BALDWIN, Special Judge, concur.

MORGAN, P. J., not sitting.