**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert Gene BURROUGHS,
Defendant-Appellant.**

No. 51823.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 31, 1987.

Motion for Rehearing and/or Transfer
Denied April 29, 1987.

Application to Transfer Denied
June 16, 1987.

Michael David Burton, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM.

Defendant-appellant, Robert Gene Burroughs, was charged with a class D felony—escape from confinement—in violation of § 575.210, R.S.Mo. He was found guilty by a jury. On June 20, 1986 he was sentenced to ten years in the Department of Corrections and Human Resources, the sentence to run consecutively with the sentence he was then serving. He appeals. We affirm.

The information charged that on July 12, 1985, while serving a sentence for robbery in the first degree, appellant escaped from confinement. The information also charged that defendant is a persistent offender as defined in § 558.016.3, having been previously convicted of two felonies committed at different times.

Trial took place in April, 1986. Appellant does not contest the sufficiency of the evidence but raises certain matters alleging trial error.

The jury could reasonably find the following facts. Appellant was an inmate of the Missouri Eastern Correctional Center in Pacific, Missouri, serving a sentence for robbery and assault. On Friday, July 12, 1985, Officer Larry McAllister was in charge of a five man outside crew working in the garden outside the institution. Burroughs was one of the outside ground crew, as was Donald Cox, an inmate serving a sentence. The crew took care of the garden, picking up and weeding the vegetables. At approximately 10:20 a.m., the crew left the grounds of the institution and worked in the vegetable garden area. After working for a time, Officer McAllister took the inmates to the prison's "maintenance garage" to wait while McAllister took the vegetables to the prison. McAllister told them to wait there. He was gone for about thirty minutes. The inmates were left unsupervised. When McAllister returned to the maintenance garage, both appellant and Cox were missing. They were reported missing sometime between noon and 2:00 p.m. A thorough search of the vicinity was conducted by officers.

The appellant testified he had five earlier convictions. He had a "drinking problem," and once "I take one drink everything else is not clear ... I don't really care what's happening." He has a history of alcoholism and treatment therefor.

The appellant testified that while inside the maintenance garage, he was sitting on a tractor and "looked up into the lofters (sic) of this garage, and there appeared to be the neck of a bottle sticking out in the lofters." He climbed up and "got it down." He "realized" it was a bottle of whiskey—he gave the bottle to "Donnie" Cox and "he poured the water out [of styrofoam cups] and poured half into my cup and half into his cup." They sat around about four to ten minutes; Burroughs went into the rafters to "try to find another bottle," but did not find one. "So—well, off through the woods we went, to get another drink." They went to a bar and ordered a "drink and a cold beer." He remembered getting back on the highway and hitchhiking and "we bought another pint of whiskey to take with us." It "didn't matter" where they were going. He "really" did not know why he was leaving. That night and the next day, they would "just relax and drink." They drank for five days, and the next thing he remembered was being in jail in Arkansas. He testified that he never made plans to escape. He knew that it was against the law to escape but "didn't care." He left the institution "to get another drink of alcohol." The two escapees were later captured in Arkansas.

Ervin A. Janko, an employee of Curtis Ogden Equipment Company located in Fenton, Missouri, testified for the state. The Company is located near the institution. He testified that on Saturday, July 13,

1985, he was working and that at about 6:00 p.m. two men came in and told him there had been a boating accident and asked if they could use the telephone. Janko described the two men. Janko consented and one man used the telephone. When he last saw them they were sitting "on the curb between two trucks there at our place of business." One of the trucks was a "boom truck" used by men doing "high line work" or "telephone wire repair." The truck was a 1977 Ford model "versa-lift"— white with blue stripe. The next day Janko discovered that the truck was missing. He called the police. On Sunday, July 14, the truck was discovered. Eight sets of fingerprints were taken from the truck, four of which were the appellant's. After talking to the police some six weeks later, he examined some photographs. An officer came into the building and reminded him of the incident and asked if "either of these men in the photographs would be one I recognized as one was there that day to use the phone." No one suggested to him to pick out a particular photograph. The photos were in two sets; each set contained one of the individuals he saw. The photos were laid out for him and he selected, as he did at the trial, the defendant's picture and identified him in court.

Another employee of Curt Ogden, Jeffrie Lynn Morgan, testified in the state's case. He too was present on July 13, at about closing time. He parked the boom truck. He too testified that two men came in and wanted to use the telephone. He dialed because "it's kind of tricky." The call was made. The last time he saw the men they were near the boom truck. The next day he learned the truck was missing. He also examined the sets of photographs. He could not absolutely identify the defendant as one of the men he saw on July 13—"he looks different." He never actually saw anyone steal the truck.

Eugene Noblin, a police officer of the City of Fenton, testified that he was involved in an investigation concerning the stolen truck. He showed photographs to Janko and Morgan at the Curt Ogden office. The photos were separately shown. He testified that Janko identified the photograph of the defendant. An objection and a motion for mistrial were made after a conference. The court sustained an objection to the question and testimony, instructed the jury to disregard it, struck it from the record, but denied the motion for a mistrial. Noblin then testified that the photographic lineup was in substantially the same condition as it was in August, 1985, when it was shown to the witnesses.

In the defendant's case, appellant's wife and brother-in-law testified. Mrs. Burroughs stated that her husband has a "drinking problem." She had known him since she was 14 years old and "as long as I can remember he has drank." Sometimes he would "stay drunk for three or four days without stopping." John Ford, defendant's brother-in-law, who also testified is aware of defendant's "drinking problem" and he is "like two different persons." When sober, he "is a pretty nice guy. When he is drunk, probably one of the worst people I have seen in my life."

The institutional investigator for the Missouri Eastern Correctional Center testified that "potato water," an alcoholic beverage made from potatoes, exists in the institution.

Ms. Lee Glans Cole, a therapist and counselor who does work with "chemical dependency" and who is a certified substance abuse counselor was called as a witness for the defense. But since she had never seen nor counseled appellant, the state's objection to her testimony was sustained. An offer of proof was made within the hearing of the jury. In the offer she described alcoholism as a "primary disease" and is considered by the American Medical Association as a chronic, progressive, treatable but not curable disease. She would testify that a person who becomes an alcoholic is "no longer able to predict with any certainty when he or she will lose control and drink in an uncontrollable way."

At the instruction conference, counsel for defendant offered an instruction mod-

eled after MAI–CR 2d 3.30.2.[1] The court refused to give this instruction.

On appeal the appellant contends that the trial court erred (1) in denying his motion for a mistrial after Officer Noblin testified that Janko identified a photograph of the defendant because such statement was prejudicial, (2) in refusing to give the proffered instruction relating to involuntary intoxication premised upon section 562.076, and (3) in sustaining defendant's objection to the testimony of Ms. Cole, the certified substance abuse counselor, because she would have testified in support of the defense's theory that alcoholics are unable to control their drinking.

As to his first point—that the trial court erred in refusing to grant a mistrial.

■■■ Granting a mistrial is a drastic remedy. Such action should be exercised only in extraordinary circumstances where the incident is so grievous, that any prejudicial effect can be removed in no other way. The granting of a mistrial and the discharge of the jury rest largely in the discretion of the trial court. An appellate court's function is to determine whether, as a matter of law, the trial court abused its discretion to the prejudice of the appellant in refusing to declare a mistrial. *State v. Heather*, 498 S.W.2d 300, 303 (Mo.App. 1973).

■■■ Appellant principally relies on *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972). In that case the Supreme Court held that an officer's testimony that a witness had extrajudicially identified the defendant by means of a photograph was hearsay, inadmissible and prejudicial. However, in *State v. Harris*, 711 S.W.2d 881 (Mo. banc 1986), the Supreme Court repudiated the principle of *Degraffenreid* that the testimony of a third person who observed a witness make a pretrial identification was per se inadmissible and held

that such evidence is "no longer presumptively inadmissible where declarant and the corroborating witness both testify and are subject to cross-examination." Even though *Harris* was decided subsequently to the trial of appellant, there was no error because of the strength of the case of escape against the defendant. *See State v. Gibson*, 633 S.W.2d 101 (Mo.App.1982); *State v. Montgomery*, 596 S.W.2d 735 (Mo. App.1980). Deference must be given to the trial court's discretion in overruling a motion for mistrial. *State v. Davis*, 639 S.W.2d 866 (Mo.App.1981); *State v. Brown*, 528 S.W.2d 503 (Mo.App.1975); *State v. Williams*, 606 S.W.2d 777 (Mo. banc 1980), vacated on other grounds, *sub. nom. Missouri v. Greer*, 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981), *on remand*, 619 S.W.2d 63 (Mo. banc 1981). There was no error in denying the motion for mistrial.

In his second point, defendant contends that the trial court erred in refusing to give an instruction on involuntary intoxication because appellant testified that he had a drinking problem.

Section 562.076, R.S.Mo. as amended effective October 1, 1984 provides in pertinent part that:

A person who is in an intoxicated condition whether from alcohol ... is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.

MAI–CR 2d 3.30.2 is the instruction on involuntary intoxication authorized at the time of defendant's trial. (*Cf.* MAI–CR 3d 310.52). That instruction states that an intoxicated condition is "involuntarily produced" when it is brought about by the introduction into his body of any substance which he does not know and has no reason

---

1. Instruction A in part was as follows:

An intoxicated condition is involuntarily produced when it is brought about by the introduction into his body of any substance which he does not know and has no reason to know has a tendency to cause an intoxicated condition.

If the defendant at the time of an offense charged against him in these instructions was in such a condition, and if that condition deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct, he must be acquitted of that offense.

to know has a tendency to cause an intoxicated condition.

Prior to the 1984 amendment, § 562.076 provided in part that:

1. A person who is in an intoxicated or drugged condition whether from alcohol, drugs or other substance is criminally responsible for conduct unless such condition:

(1) Negatives the existence of the mental states of purpose or a knowledge when such mental states are elements of the offense charged or of an included offense; or

(2) Is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct or to conform his conduct to the requirements of law.

It is to be noted that the amendment effective October 1, 1984 eliminated subsection 1(1) and provided that only involuntary intoxication is a defense to a criminal offense.

Prior to the amendment, § 562.076.1(1) was exhaustively discussed and construed in *State v. Gullett*, 606 S.W.2d 796 (Mo. App.1980). *Gullett* dealt only with voluntary intoxication and held that it is applicable to those offenses defined in the Criminal Code in terms of the culpable mental states of acting purposely or knowingly, but is inapplicable to offenses defined in terms of acting recklessly or for which a culpable mental state is not prescribed.

The General Assembly, however, in amending § 562.076 by completely deleting 562.076.1(1) has reverted to the common law rule that voluntary intoxication is not a defense to a criminal charge whether or not the offense requires a general or specific intent. *State v. Richardson*, 495 S.W.2d 435, 440 (Mo. banc 1973).

■ As to involuntary intoxication, *State v. Bishop*, 632 S.W.2d 255 (Mo.1982) is apposite. There, defendant was charged with various offenses. His defense was that he was in a drugged condition which was involuntarily produced and which deprived him of the capacity to appreciate the wrongfulness of his conduct. The cause was court-tried. The defendant testified that he was addicted to drugs. A physician testified that when defendant took drugs, it was an act of compulsion so that he could not conform his behavior to the requirements of law. It was defendant's theory that when one becomes addicted to a drug, the taking of drugs is a matter of necessity and is taken under compulsion rather than voluntarily. The Supreme Court posed the issue: "Is the drugged condition of a defendant 'involuntarily produced' within the meaning of the statute merely because the defendant … is a drug addict?" After examining the Comments to the Criminal Code, the Model Penal Code, the statutes and decisions of other states, the Supreme Court concluded that § 562.076.1(2) (now 562.076.1) does not authorize a drugged condition resulting from self-administered drugs, to be a defense. Although *Bishop* was a court-tried case, the holding of the decision is broad enough to encompass both court-tried and jury tried cases. Although *Bishop* dealt with self-administered drugs, the decision equally applies to self-administered alcohol. The fact that appellant here had a "drinking problem" and was an alcoholic and was treated therefore instead of a "drug addict" as in *Bishop* is not significant. Self-administered alcohol is no more a basis for an involuntary intoxication defense than a self-administered drug condition. As in *Bishop*, we hold that the trial court did not err in holding that the evidence of self-induced alcoholism does not establish a defense under § 562.076 and that the trial court did not err in refusing to give the proffered instruction on an involuntarily produced intoxicated condition.

■ Lastly, appellant contends the trial court erred in rejecting the offered testimony of the certified substance-abuse counselor who would have testified in support of appellant's defense theory that alcoholics may lose control and drink in an uncontrollable way, so as to be unable to control themselves.

Appellant relies on *State v. Garrette*, 699 S.W.2d 468, 500 (Mo.App.1985), *State v. Guyton*, 635 S.W.2d 353, 360 (Mo.App.

**576**

1982), *State v. Stevens*, 467 S.W.2d 10 (Mo. 1971), *cert. den.*, 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971) and *State v. O'Dell*, 649 S.W.2d 504 (Mo.App.1983). These decisions are not dispositive. They state the principles of law that (1) the question of whether an expert opinion is based upon and supported by sufficient facts in evidence to sustain it is a question of law, (2) the admission or exclusion of expert testimony is a matter within the sound discretion of the trial court, (3) a conviction will not be reversed unless there is a clear abuse of discretion, which resulted in prejudice to the defendant, (4) the determination whether a witness meets the qualifications of an expert rests largely in the discretion of the trial court, and (5) an appellate court will not reverse unless there is a clear abuse of discretion.

The issue of whether an expert should be permitted to testify on involuntary intoxication when a defendant is a chronic alcoholic was thoroughly discussed in *Com. v. Kuhn*, 327 Pa.Super. 72, 475 A.2d 103 (1984). In that case the court concluded that involuntary intoxication cannot be established through evidence showing that the defendant is a chronic alcoholic incapable of refraining from the use of alcohol. See also Note, *Alcohol Abuse and the Law,* 94 Harv.L.Rev. 1660, 1685 (1981); 73 A.L.R.3d 195, 222 (1976) and 1986 Supp. at 9 collecting cases.

We cannot conclude that the trial court, under the circumstances, abused its discretion, in rejecting the testimony of the substance-abuse counselor.

We have examined the entire record and the authorities relied upon by the appellant and conclude that there is no prejudicial error.

The judgment is affirmed.

All the Judges concur.