STATE of Missouri, Respondent,

v.

Lamar SHIELDS, Appellant.

Lamar SHIELDS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 61916, 63652.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 5, 1993.

Marcie W. Bower, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals from a jury conviction of second degree burglary, for which he was sentenced to fifteen years' imprisonment as a Class X offender. On appeal, Defendant asserts: (1) the trial court erred in refusing to give an instruction on involuntary intoxication and plainly erred in sustaining the State's motion in limine excluding any argument on this issue; (2) the trial court plainly erred in not declaring a mistrial *sua sponte* during the State's rebuttal argument; (3) the trial court plainly erred in submitting Instruction No. 4, patterned after MAI–CR3d 302.04; and (4) the motion court plainly erred in denying Defendant's Rule 29.15 motion. We affirm.

On the evening of July 20, 1991, Defendant was observed crawling out of a broken window of a Salvation Army store. When apprehended, Defendant also had clothes marked with Salvation Army tags. Defendant was arrested for burglary.

At trial, Defendant testified he was taking methadone as a treatment for his heroin addiction. Defendant's girlfriend testified that on the morning of July 20, 1991, at approximately 10 a.m., she drove Defendant to the West End Clinic to get his dosage of methadone. Defendant's brother also testified he saw Defendant around 5 p.m. on the day of the burglary. Defendant's brother characterized Defendant's behavior at this time as "very unusual." Defendant's brother stated Defendant asked to borrow some money. He handed Defendant some money and next observed Defendant standing in the middle of the street counting the money.

Defendant's mother testified she had observed Defendant's behavior on several occasions after he had taken methadone. She stated Defendant often acted "hyper" after he had been to the clinic to receive a dosage of methadone. On one occasion she saw Defendant vomit after receiving the methadone. Another time she observed Defendant break into a sweat that he claimed was caused by the methadone. At trial, Defendant requested the court instruct the jury on the defense of involuntary intoxication. The trial court denied this request.

█ In Point I, Defendant alleges the trial court erred in refusing his proffered instruction on involuntary intoxication and plainly erred in sustaining the State's motion in limine which precluded any argument on the issue of involuntary intoxication. Defendant alleges the trial court erred in refusing to give this instruction because he offered evidence he was involuntarily intoxicated at the time of the burglary. The involuntary intoxi-

cation defense is defined in § 562.076.1, RSMo 1986, which provides:

> A person who is in an intoxicated or drugged condition whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.

■ Defendant bears the burden of injecting the issue of an intoxicated or drugged condition. § 562.076.2. No evidence was presented at trial to indicate Defendant was intoxicated to the point he was unable to know or appreciate the nature, quality, or wrongfulness of his conduct at the time of the burglary. The court is required to instruct the jury on a defense only when substantial evidence to support the defense has been presented. *See e.g., State v. Sproul,* 786 S.W.2d 169, 173[10] (Mo.App.1990); *State v. Ehlers,* 685 S.W.2d 942, 948[6] (Mo.App. 1985).

The only evidence about Defendant's mental state on the day of the burglary came from Defendant's brother and girlfriend. Defendant's brother, who saw Defendant three hours before the burglary, testified Defendant was acting very unusual and very sporadic. Defendant's girlfriend testified she observed "nothing unusual at all" about Defendant's behavior after he received his methadone dosage on the morning of the burglary. In fact, she entrusted Defendant with three young children and her car. This evidence is insufficient to meet Defendant's burden of injecting the issue of an intoxicated or drugged condition. *State v. Gannaway,* 649 S.W.2d 235, 238[4] (Mo.App.1983).

■ Defendant also failed to establish his alleged intoxicated state was produced involuntarily. The instruction proffered by Defendant, based on MAI–CR3d 310.52, states:

> A drugged condition of a person is involuntarily produced when it is brought by the introduction into his body of any substance which he does not know and has no reason to know has a tendency to cause such a drugged condition.

Defendant presented no evidence at trial indicating methadone was a substance he did not know or have reason to know caused a drugged condition. Defendant attempts to argue he was involuntarily intoxicated because he ingested methadone as part of the medically prescribed treatment for his heroin addiction. We disagree.

In *State v. Bishop,* the defendant attempted to argue his drugged condition was involuntarily produced because he was addicted to drugs. 632 S.W.2d 255, 256 (Mo.1982). The Missouri Supreme Court rejected this argument stating the fact that defendant was addicted to drugs and took drugs to maintain this condition did not establish his drugged condition was involuntarily produced. *Id.*

■ Defendant argues his circumstances are different from those in *Bishop* because he ingested the methadone to alleviate his condition as a drug addict rather than to maintain it. This argument is unpersuasive. The legality of the intoxicating substance has no affect upon whether its consumption and the intoxication produced thereby were voluntary. *See, State v. Burroughs,* 729 S.W.2d 571, 575[4] (Mo.App.1987) (holding intoxication resulting from an alcoholic's overindulgence in alcohol is not involuntarily produced). Further, Defendant is being treated for a drug addiction which he induced voluntarily. We find no error in denying Defendant's proffered instruction on involuntary intoxication. Further, we find no plain error in sustaining the State's motion in limine precluding argument on the issue of involuntary intoxication. Point denied.

■ In Point II, Defendant alleges plain error resulted when the court failed to declare a mistrial *sua sponte* during the State's rebuttal argument. Defendant alleges the following statement made a mockery of his right to proceed to trial:

> You might say to yourself, because the result here is so obvious, okay, you probably think to yourself: I don't understand why we are even here, okay. The point is everyone has a right to a trial and even where the result is obvious, alright, that trial can go on, okay. Your instincts are right, there is nothing wrong with this case. He knew what he was doing.

Defendant also claims the following statement improperly injected the prosecutor's personal opinion and was calculated to inflame the passions of the jurors:

You are now in a position where you decide what goes on in this community, alright. The evidence is completely overwhelming here. You know it, I know it, okay. The point is, you have to care enough to say: Yeah, alright, the facts as applied to the law he's guilty as sin, alright, and the Salvation Army and little people in the world matter.

■ Defendant made no objection to these remarks at trial; therefore, we review only for plain error. *State v. Washington*, 846 S.W.2d 794 (Mo.App.1993). Under the plain error standard, relief is granted only where there is a strong showing of manifest injustice or a miscarriage of justice will result. *State v. Hill*, 808 S.W.2d 882, 888[8] (Mo. App.1991). Errors in closing arguments will not justify relief under the plain error standard unless the remarks had a decisive effect on the jury. *State v. Long*, 768 S.W.2d 664, 666 (Mo.App.1989).

We do not believe these statements, made by the State in response to Defendant's closing argument, resulted in such manifest injustice as to warrant a mistrial *sua sponte* by the trial court. Most of these portions of the State's argument were permissible statements to jurors regarding their duty to uphold the law and the implications of their failure to do so. *Washington*, 846 S.W.2d at 795. Further, we are not persuaded any of these statements had any decisive effect on the jury. Point denied.

■ In Point III, Defendant alleges the trial court plainly erred in submitting Instruction No. 4, patterned after MAI–CR3d 302.04. He argues this instruction incorrectly defines "reasonable doubt" as "firmly convinced." The Missouri Supreme Court has held MAI–CR3d 302.04 to be within the parameters of *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993). Point denied.

■ Defendant's final point alleges the motion court clearly erred in denying his Rule 29.15 motion. Defendant alleges appointed motion counsel's failure to file an amended motion and request an evidentiary hearing violated the standard of Rule 29.-15(e) and thereby constituted an abandonment under the standard established in *Luleff v. State*, 807 S.W.2d 495, 498[5–7] (Mo. banc 1991). We disagree.

Rule 29.15(e) provides:

When an indigent movant files a *pro se* motion, the court shall cause counsel to be appointed for the movant. Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence.

In *Luleff v. State*, the Missouri Supreme Court held counsel's failure to comply with Rule 29.15(e) constituted an abandonment of counsel entitling defendant to appointment of new counsel and an extension of time in order to file an amended motion. 807 S.W.2d at 498. In *Luleff*, the court based its finding of abandonment on two factors: (1) no activity on movant's behalf by appointed counsel; and (2) no inquiry by the trial court regarding the performance of counsel. 807 S.W.2d at 498. Neither of these factors are present in this case. Defendant's postconviction counsel complied with Rule 29.15(e) because he reviewed the record and determined Defendant's *pro se* motion included all possible grounds for relief and included sufficient facts to support these allegations. He filed an Affidavit in Lieu of Amended Motion specifically stating he had reviewed the record and investigated all allegations raised by Defendant and concluded there were no additional grounds to be raised. *Thurlo v. State*, 841 S.W.2d 770, 772[3] (Mo.App.1992). The motion court also specifically found the standards set forth in *Luleff v. State* were met. This finding is not clearly erroneous; therefore, Defendant's final point has no merit. *Id.*

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.