**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Stacy SHELTON, Defendant/Appellant.**

**No. 55406.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 18, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Cathy R. Kelly, Asst. Public Defender, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Debra M. Miles, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

GRIMM, Presiding Judge.

In this jury-tried case, defendant, Stacy Shelton, was found guilty of second degree robbery, in violation of § 569.030, RSMo 1986. On appeal, he raises only one point: trial court error in failing to grant a mistrial, or new trial, when a juror saw defendant's alibi witness in handcuffs. Finding no reversible error, we affirm.

At approximately 10:00 p.m. on November 5, 1987, the woman victim cashed a $100.00 check at the Currency Exchange. After receiving the money, she placed it in her wallet. As she was returning the wallet to her purse, a man, later identified as defendant, hit her in the ribs with his elbow. He grabbed the wallet and ran.

The victim ran after defendant and caught him in the doorway. She struggled with him, both in the doorway and outside the building. As they struggled, their faces were "close enough that [she] could have kissed him."

An Exchange security guard heard the victim scream. He saw the victim chase defendant. By the time the guard got out of his secured room, the victim and defendant were outside the building.

The guard had seen defendant standing in the Exchange lobby just prior to the robbery. At that time, defendant was five feet away from the guard. The guard had also seen defendant in the neighborhood of the Exchange at least twice before, the most recent being a few days earlier.

The victim and the guard each gave the police a description of the robber. About two weeks later, the guard saw a police car parked near the Exchange. He walked over to the car, looked in the window, and saw defendant. He then told the police that the person in the car was the robber.

Later that night, the police asked the victim to view a line-up. She immediately recognized defendant as the man who had robbed her. At trial, both witnesses identified defendant as the robber.

Defendant, on the other hand, produced three alibi witnesses who testified that he was at home at the time of the robbery. The witnesses were his mother, his sister, and his girl friend, Teresa Jones.

A recess was declared following Jones's testimony. While in the hallway outside the courtroom, one juror saw Jones get on an elevator with two men. The juror saw one of the men, apparently a plain clothes officer, handcuff Jones.

The juror contacted the judge during the trial. The record does not disclose exactly when or what the juror told the trial judge; the juror apparently talked to the judge in the attorneys' presence.

From a record made while the jury was deliberating, it appears that the juror said (1) following Jones's testimony, he concluded she was lying; (2) seeing her in handcuffs confirmed that opinion; and (3) he wondered if it would be proper to tell the other jurors of his observation. The trial judge told him that he must not do that, and the juror agreed. Defendant made no objection, but indicated that he reserved his "right to ask for an appropriate relief" after the "jury verdict has been announced."

After the verdict was received, the juror was asked a few questions on the record. He basically confirmed the above information. The juror did not believe that Jones was being arrested for perjury. He thought only that "she was being arrested for something" or that "she was already

under arrest and was brought up as a witness." The defendant then moved for a mistrial, which was denied.

Defendant alleges that the trial court should have granted a mistrial or a new trial, because "the incident confirmed [the juror's] opinion that said witness had lied on the stand."

Granting a mistrial is a drastic remedy, "to be utilized only when there is grievous error which cannot be remedied otherwise." *State v. Beal*, 470 S.W.2d 509, 516 (Mo. banc 1971). Because the trial court is in a better position to determine any prejudicial effects from an alleged error, the granting of a mistrial is within its discretion. *Id.; see also State v. Smith*, 675 S.W.2d 690, 694 (Mo.App.E.D.1984). "The reviewing court, in order to hold that a failure to grant mistrial was a reversible error, must conclude as a matter of law from the entire record, that the error was so prejudicial that its effect was not removed by the action of the trial court." *State v. Rogers*, 585 S.W.2d 498, 502 (Mo. App.E.D.1979).

Neither party referred us to a case involving a juror seeing a witness being placed in handcuffs after the witness testified, nor have we discovered one through our research. However, a number of cases have involved the analogous situation of a juror seeing a defendant in handcuffs.

Generally, the mere fact that a juror has seen a defendant in handcuffs is not sufficient grounds for mistrial. The courts have acknowledged that "[i]t is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another." *State v. Fields*, 487 S.W.2d 560, 561 (Mo.Div. 2 1972) (quoting *United States v. Leach*, 429 F.2d 956, 962 (8th Cir.1970)); *see also State v. Gibson*, 633 S.W.2d 101, 107 (Mo.App.E.D.1982).

Further, "[n]umerous cases have recognized that a brief, inadvertent exposure to the jury of a handcuffed defendant while he is being taken from one place to another does not deprive the defendant of a fair trial." *State v. Crawford*, 539 S.W.2d 633,

635–636 (Mo.App.W.D.1976). *State v. Bonnarens*, 724 S.W.2d 287 (Mo.App.S.D.1987).

This court has previously noted that the standard governing the propriety of the accused to be compelled to appear in court restrained in shackles is apparently the same for witnesses. *State v. Jones*, 556 S.W.2d 736, 738 (Mo.App.E.D.1977). See also, Annotation, *Right of Accused to Have His Witnesses Free From Handcuffs, Manacles, Shackles, or the Like*, 75 A.L. R.2d 762 (1961); Annotation, *Propriety and Prejudicial Effect of Gagging, Shackling, or Otherwise Physically Restraining Accused During Course of State Criminal Trial*, 90 A.L.R.3d 17 (1979).

The rationale applied to cases involving jurors seeing a defendant in handcuffs is equally applicable to cases involving jurors seeing a witness in handcuffs. The brief, inadvertent exposure to one juror of Jones being handcuffed did not deprive defendant of a fair trial. There was no evidence that the officers intentionally handcuffed Jones in front of the juror. The handcuffs were not placed on her until they were in an elevator, and it was only by chance that one juror caught a glimpse of the witness in handcuffs.

In denying the mistrial, the trial judge specifically stated, "I feel that there was nothing prejudicial that occurred." The trial judge had the opportunity to observe the juror twice as the matter was discussed. As a result, the trial judge was in a better position than this court to determine the effect of this accidental and fleeting incident.

We make two further observations. First, the evidence against defendant was strong. Both the victim and the guard had ample opportunity to see defendant at close range. The victim, a cosmetologist, noted that defendant was "wearing a chemical curl" at the time of the robbery. At the time of the lineup, the victim was able to recognize him because she "would never forget" his eyes and skin, and although "his curl had receded," it was still in his hair and she recognized it. Also, the victim and the guard each unequivocally identified

defendant two weeks after the incident, and again during trial.

Second, when the juror brought his observations to the court's attention, defendant did not make any objection or seek any relief. An alternate juror was available. Defendant, however, did not ask that the alternate replace the juror who had made the observation. Rather, defendant decided to "roll the dice" and see if he would be acquitted. Defendant's request for mistrial, made only after the jury returned its verdict, was untimely. *See State v. Borden*, 605 S.W.2d 88, 91 (Mo.banc 1980).

The trial court did not abuse its discretion in denying defendant's request for a mistrial. Defendant's point is denied, and the judgment is affirmed.

KAROHL and GARY M. GAERTNER, JJ., concur.