**STATE of Missouri, Plaintiff–Respondent,**

v.

**James HILL, Defendant–Appellant.**

**James HILL, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 56971, 58339.

Missouri Court of Appeals, Eastern District, Division Three.

March 19, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 16, 1991.

Application to Transfer Denied June 11, 1991.

Michael D. Burton, Ellen A. Blau, St. Louis, Craig A. Johnston, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

James Hill appeals from his convictions, after a five day jury trial, on two counts of rape, Section 566.030, RSMo 1986, two counts of sodomy, Section 566.060, RSMo 1986, one count of second degree robbery, Section 569.030, RSMo 1986, and one count of felonious restraint, Section 565.120, RSMo 1986. Additionally, James appeals the dismissal of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. We have consolidated James' two appeals, pursuant to Rule 29.15(*l*). We affirm.

The evidence adduced at trial in the light most favorable to the verdict is as follows. On October 8, 1988, victim traveled east on highway 44, looking for an exit to highway 55 south, which she intended to take home. Victim missed her exit, and became lost on highway 70. Victim exited the highway several times in an attempt to find a familiar area. While traveling in the inside lane, victim ran over something, which tore up

the bottom of her car and caused a flat tire. After victim got out of the car and inspected it, she got back in her car and began crying. Since no one stopped to assist victim, victim got out of her car and started walking.

As victim crossed a ramp, she saw a car coming down the ramp. The car, driven by Gregory Hill with James Hill as his passenger, pulled up beside the victim. Victim told them that her car had broken down and that she needed to get to a phone. They told victim that they would take her to a phone. Victim got in the back seat of the car, still crying. She could not see very well, as mascara was in her eyes.

While riding down the highway, victim noticed that they passed an exit, but one of the Hill brothers informed her that there wasn't a telephone at the exit. When victim next looked up, she noticed that they were in a park. Realizing that there was not a phone nearby, and recognizing that something was wrong, victim jumped out of the car and took off.

The Hill brothers chased her. Gregory grabbed victim by her arm, and James demanded her purse. Victim gave the men her purse. Gregory subsequently knocked victim to the ground. Gregory then demanded victim's jewelry. Gregory grabbed the rings off her fingers and began yanking on her necklaces. Victim thereafter took off her necklaces and gave them to the two men. James returned to the car with victim's purse.

Gregory tried to get on top of victim, and began pulling off her panty hose. When victim screamed, he told her to shut up or he would kill her. James arrived back from the car. Victim pleaded with James to help her, but James refrained from so doing, and again returned to the car at Gregory's request.

After James left, Gregory raped victim, tore her dress, and fondled her breasts. Victim told Gregory she was sick, so he leaned up. Victim turned over, got up and ran. Gregory chased her, grabbed her and dragged her to a little grove of trees. Gregory raped her again.

Victim could hear someone blowing a horn. Shortly thereafter, James returned from the car. Gregory encouraged James to partake. As James raped victim, Gregory placed his penis in her mouth. The two men then switched places, and continued to rape and sodomize victim. Thereafter, the two men took victim back to the car; James drove the car, while Gregory sat with victim in the back seat.

While they were driving down a hill, victim saw police lights and jumped out of the car. Victim told Officer Acquilla Lagrone, a police officer with the City of St. Louis, that the two men in the car just raped her. Officer Lagrone ordered the Hills out of their car. Gregory thereafter told Officer Lagrone that victim was "his woman" and that they had come to the park to have some fun. James corroborated Gregory's story. Victim again told Officer Lagrone that they had raped her. Victim also told Officer Lagrone that they had her jewelry. Victim told the Hills that if they gave her back her belongings, she would not prosecute. James removed some jewelry and victim's purse from the car. The police subsequently transported both men to the police station, where more of victim's jewelry was found in Gregory's pocket.

The police took victim to the police station. Victim was then taken to Barnes Hospital for treatment. Dr. Joseph Crow, a serologist for the City of St. Louis, examined her body fluids. He found human seminal acid phosphatase and a human spermatoza head in victim's vaginal swabs.

James was charged by indictment on November 3, 1988. He did not testify at trial. At the close of the state's case, James moved for a judgment of acquittal. The court denied the motion. Again, at the close of all evidence, James moved for a judgment of acquittal. The court similarly denied this request. The jury returned verdicts, finding James guilty of all six counts. On June 30, 1986, the court sentenced James as a prior and persistent offender, to life imprisonment on one count of rape, twenty years on one count of sodomy, ten years on another count of rape, ten years on another count of sodomy, five years on

second degree robbery, and five years on felonious restraint. All sentences are to run consecutively. The court additionally ordered James to pay $68.00 to the Victim's Crime Compensation Fund.

James filed a notice of appeal on July 10, 1989. On November 28, 1989, James filed a *pro se* motion for post-conviction relief, pursuant to Rule 29.15. James additionally filed a motion to disqualify the trial court judge. The trial court judge sustained this motion. A motion court judge was subsequently assigned to hear James' Rule 29.15 motion.

On January 17, 1990, the court appointed counsel to represent James. The motion court ordered counsel to file an amended Rule 29.15 motion and/or a request for an evidentiary hearing on or before February 19, 1990. On February 27, 1990, the motion court overruled James' motion to extend or in the alternative to set aside the original order appointing counsel and to reappoint other counsel. However, the motion court did grant leave for James to file an amended Rule 29.15 motion and or a request for an evidentiary hearing on or before March 21, 1990. On March 19, 1990, James filed his Rule 29.15 motion and his request for an evidentiary hearing. The motion court issued its findings of fact and conclusions of law, denying James' motion on April 11, 1990. James filed his notice of appeal on April 19, 1990. We have consolidated James' two appeals, pursuant to Rule 29.15(*l*).

James' first point on appeal is that the trial court abused its discretion in overruling his objections and requests for mistrial regarding statements made by the assistant circuit attorney during the state's closing argument. Specifically, James contends that the assistant circuit attorney: (1) made three improper personal attacks on defense counsel; and (2) commented on matters outside the evidence.

■ At the outset, we note that broad discretion rests with the trial court in controlling closing argument, with wide latitude accorded counsel in their summation. *State v. Schwer*, 757 S.W.2d 258, 263 (Mo. App.1988). We will only reverse a ruling for abuse of discretion where the argument is plainly unwarranted. *Id.*

■ Granting a mistrial is a drastic remedy. *State v. Shelton*, 779 S.W.2d 614, 616 (Mo.App.1989). It should only be utilized where there is grievous error which cannot otherwise be remedied. *Id.* The granting of a mistrial rests largely in the discretion of the trial court because the trial court is in a better position to determine any prejudicial effects from the alleged error. *Id.* In order to hold that the failure to grant a mistrial was reversible error, we must conclude, after reviewing the entire record, that as a matter of law the error was so prejudicial that its effect was not removed by the trial court's action. *Id.*

■ We have reviewed each of the four remarks James finds objectionable. Each comment was made in response to a comment made by defense counsel. It is well-established that a prosecutor is permitted to exceed the normally recognized limits of closing argument in retaliation to defense counsel's argument. *State v. Bryant*, 741 S.W.2d 797, 799 (Mo.App.1987). James' first point is therefore denied.

James' second point on appeal is that the trial court plainly erred in failing to declare a mistrial, *sua sponte*, following the prosecutor's argument to the jury: (1) that he assumed the victim had never been raped before; (2) the crime would change him and the jury forever; (3) the men on the jury could not be raped in the same way the victim had been; and (4) he believed the victim. James contends that the prosecutor improperly vouched and personalized the case to the jury. James also contends that the prosecutor's statements constituted arguments based on facts not in evidence.

■ James failed to object at trial to the portions of the state's arguments which he now finds objectionable. Instead, James asserted this challenge for the first time in his motion for a new trial, which the trial court denied. It is well-established that complaints concerning the substance of closing argument call for immediate objec-

tion so that corrections may be made and appropriate cautionary instructions given. *State v. Schneider*, 736 S.W.2d 392, 398 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). An objection raised after the close of argument comes too late. *Id.* Thus, James failed to preserve any contention of error pertaining to the challenged portions of the prosecutor's arguments.

■■■ Moreover, we do not believe that the arguments in this case were so noticeably improper or prejudicial as to warrant a mistrial *sua sponte* by the trial court. *Id.* Relief should rarely be granted on an assertion of plain error to matters contained in closing argument, as trial strategy looms as an important consideration and such assertions are generally denied without explication. *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986). Plain error affecting substantial rights may be considered on appeal although not properly preserved for review, but only where there is a sound, substantial manifestation, a strong, clear showing that injustice or a miscarriage of justice will result if relief is not given. *Id.* Here, a review of the prosecutor's remarks reveals that the prosecutor was informing the jury as to both the legal definition and elements of rape. He remarked that he assumed that the victim had never been raped before, in an effort to explain that the victim's choice of word selection and ability to discuss this crime is the result of her experience with the police, the doctor, and the attorneys involved in the prosecution of this case. James was represented by able counsel, as was Gregory. Both of their attorneys considered the remarks inconsequential, not warranting objection, or, as trial strategy. We cannot say that these challenged remarks, raised for the first time on appeal, demonstrate a strong and clear showing that injustice or a miscarriage of justice resulted. James' point is therefore denied.

James' third point on appeal is that the trial court plainly erred in sustaining and sentencing him on counts I (rape), II (sodomy), IV (sodomy) and VI (felonious restraint) of the indictment. Specifically,

James contends that the trial court had no jurisdiction to try him on such counts since the information did not charge him with the crimes alleged in those Counts. James argues said Counts only charged Gregory with the crimes.

The primary purpose of an indictment or information is to give general notice to the defendant of the charge against him. *State v. Higdon*, 774 S.W.2d 498, 500 (Mo. App.1989). We have previously held, in cases governing defendants charged by information, that notice allows the defendant to prepare an adequate defense and avoid retrial on the same charges in the case of acquittal. *Dorris v. State*, 743 S.W.2d 904, 906 (Mo.App.1988). This principle similarly applies in cases where the defendant is charged by indictment.

■■■ Here, Counts I, II, IV and VI of the indictment charge "the defendant, Gregory Hill, acting with the defendant, James Hill committed ...", thereafter specifying the alleged crime. Such language was sufficient to give James general notice of the charge against him so that he could prepare an adequate defense. Moreover, an indictment may charge a defendant either as a principal or as an aider and encourager with the same legal effect. *State v. Luckett*, 770 S.W.2d 399, 405 (Mo. App.1989). James' third point is therefore denied.

James' fourth point is that the trial court erred in: (1) overruling his motion to quash the jury panel; and (2) permitting the trial to proceed after the state used nine of its twelve peremptory challenges to exclude black individuals from the jury.

Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a defendant must meet three requirements in order to establish a prima facie case of purposeful racial discrimination. First, the defendant must show that he is a member of a cognizable racial group. *Id.*, 476 U.S. at 96, 106 S.Ct. at 1723. Second, the defendant must show that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire. *Id.* Third, the defendant must show that these facts and any other rele-

vant circumstances raise an inference that the prosecutor used that practice to exclude venire persons from the petit jury on account of their race. *Id.* at 96–97, 106 S.Ct. at 1722–23. Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors. *Id.* In *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), our Supreme Court expanded upon *Batson* to require the trial court to consider the prosecutor's explanations for the peremptory strikes in the process of determining the existence of the third element of the prima facie case.

Here, the trial court found that James had established a prima facie case of racial discrimination. The jury list consisted of sixty people. After strikes for cause, thirty-six individuals remained on the jury panel, fifteen of whom were black. The prosecutor used nine of his twelve peremptory strikes to remove blacks. The defendants used three peremptory strikes against blacks. Thus, the petit jury consisted of nine whites and three blacks.

The trial court required the prosecutor to explain his strikes. Having heard the state's reasons, the trial court stated "the court finds the reasons given by the state are not pretextual, are neutral on their face. Accordingly, the Court is overruling your *Batson* challenge."

■ We review the substantive findings of the trial court. *State v. Kilgore,* 771 S.W.2d 57, 62 (Mo. banc 1989). A reviewing court will only set aside a trial court's findings as to whether the prosecutor discriminated in the exercise of his peremptory challenges if they are clearly erroneous. *Id.* A finding is deemed clearly erroneous where the reviewing court is left with a definite and firm impression that a mistake has been committed. *Id.*

The trial court's finding that the prosecutor proffered sufficient reasons for striking nine black panel members is substantiated by the record, which represents legitimate, not pretextual, neutral explanations for the state's peremptory challenges. Venire

member Nash knew the prosecutor. Venire member Booker's husband was charged with a felony assault and, during the time of the trial, was on probation or parole. Venire member Hubbard did not want to serve on the jury. Additionally, she had no prior jury service. Venire member Jones similarly stated that she did not want to serve as a juror. Venire member Keys sat on a murder trial which returned a not guilty verdict. Moreover, she kept her eyes closed during the prosecutor's examination. Venire member Johnson: (1) was unemployed; (2) had a brother serving time on a rape charge; (3) felt her brother's situation was unfair because he didn't really do very much; and (4) had no prior jury service. Venire member Johnston was unemployed. Venire member Jennings served on a robbery case that ended in a hung jury. There was also a question about whether venire member Jennings was related to another Jennings that the state previously prosecuted. The prosecutor peremptorily struck venire member Hackney because she had no prior jury service and because she was a woman. The prosecutor stated that he prefers to have male jurors on rape cases.

■ James challenges the prosecutor's peremptory strike of venire members Hubbard, Jones and Hackney on the basis that they had no prior jury service because seven other jurors who were not struck also indicated that they had no prior jury service. James also challenges the prosecutor's peremptory strike of venire member Hackney on the basis that she is a woman since two of the prosecutor's strikes were men and four women remained on the jury. Finally, James challenges the prosecutor's peremptory strike of venire member Rice on the basis that he was unemployed since juror Shelton, who was retired, was not struck. However, under *Batson,* the state is not required to establish that its grounds would warrant excusal for cause. *Batson v. Kentucky, supra,* 476 U.S. at 97, 106 S.Ct. at 1723. Instead, the prosecutor is permitted to exercise his peremptory challenges on the basis of his legitimate "hunches" and past

experiences so long as racial discrimination is not the motive. *State v. Kilgore, supra,* 771 S.W.2d 57, 63 (Mo. banc 1989). The trial court's ruling was not clearly erroneous.

James' fifth point is that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to support his convictions for both counts of rape since the evidence failed to establish beyond a reasonable doubt that there was penetration of the victim's sexual organ. Our consideration is limited to whether there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Murphy,* 753 S.W.2d 90, 91 (Mo.App.1988). We accept as true all evidence, whether direct or circumstantial, which tends to prove a defendant guilty together with all reasonable inferences supportive of the verdict. *Id.* Therefore, the sole question on appeal is whether the evidence, when viewed in the light most favorable to the State, is sufficient to support the verdict. *Id.*

One commits the crime of forcible rape if he has sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion. Section 566.030.1, RSMo (1986). Sexual intercourse occurs when there is any penetration, however slight, of the female sex organ by the male sex organ, whether or not emission results. Section 566.010.1(1), RSMo (1986). Testimony of a rape victim, even though uncorroborated, will ordinarily sustain a conviction. *State v. Dee,* 752 S.W.2d 942, 944 (Mo.App.1988). This is true unless the testimony is of a contradictory nature or so unconvincing as to require corroboration. *State v. Bryant,* 756 S.W.2d 594, 597 (Mo. App.1988). Moreover, unless there are major inconsistencies and contradictions in the victim's testimony, her credibility is a matter for the jury to determine. *Id.*

In reviewing the victim's testimony for the purposes of this appeal, it is clear that penetration occurred. Proof of penetration may be shown by direct or circumstantial evidence. *State v. Ivey,* 303 S.W.2d 585, 587 (Mo.1957). Furthermore, slight proof of penetration is sufficient. *Id.*

Here, the state provided both direct and circumstantial evidence that James penetrated victim. Victim testified that Gregory tried to have intercourse with victim by putting his penis inside her. The prosecutor asked victim: "[d]id he get his penis inside of you?" Victim responded: "[n]o, not all the way ... [j]ust like part." James subsequently returned from the car and joined in the action. Victim testified as follows:

A. ... the passenger (James) was trying to have intercourse with me, the other one went and got up by my face. That's when he stuck his penis in my mouth.

Q. The man with the white jacket? (Gregory).

A. The man with the white jacket, the driver.

Q. You said the other man tried to have intercourse with you. Can you use words to describe his physical actions?

A. He was just trying to push my legs apart and trying to push his penis inside me.

Q. Was there any contact between his penis and your vagina?

A. Just a little. They never did totally enter. And then after that, then it's like they switched. The other one went and got up and was putting his penis in my mouth, then the other one went back, the driver went back down to my vagina and was trying to enter.

Victim's testimony was not so inherently unbelievable or contradictory so as to be unsubstantial or improbable. Although no corroboration of her testimony is necessary, there is corroborative testimony in the transcript. The serologist testified that he found human spermatazoa on the vaginal smear. Additionally, he found human seminal acid phosphatase on the vaginal swab, which indicates that seminal fluid was present on the swab. The serologist explained that the significance of these

findings was that victim had sexual intercourse with someone.

The state thus provided both direct and circumstantial evidence that James penetrated victim. Therefore, the trial court properly denied James' motion for judgment of acquittal at the close of all evidence. James' fifth point is denied.

James' sixth point on appeal is that the trial court abused its discretion in denying James' motion to sever the trial of James and Gregory. James argues that material and substantive evidence, not admissible against James, but admissible against Gregory came before the jury thereby denying James a fair trial. Specifically, James contends that Gregory's statements that victim was "his woman" and "we come out here all the time to have fun", were inadmissible as to him. Moreover, James contends his defense was hindered by Gregory's testimony.

Rule 24.06 governs joint trials. Subsection (b) provides in pertinent part:

If two or more defendants are charged in an indictment or information, all defendants shall be tried together unless the court orders a defendant to be tried separately. A defendant shall be ordered to be tried separately only if the defendant files a written motion requesting a separate trial and the court finds a probability of prejudice exists or: ...

(3) There is an out-of-court statement that is not admissible against the defendant that would be admissible against other defendants if a separate trial is not ordered unless the court finds the out-of-court statement can be limited by eliminating any reference to the defendant; or

(4) A separate trial is necessary to a fair determination of whether the defendant is guilty.

See also Section 545.880, RSMo (1986). James argues that the trial court should have granted his motion to sever based on Rule 24.06(b)(3) and (4).

■ At trial, the state called Officer Lagrone. Officer Lagrone testified that after he pulled over the car containing Gregory, James and victim, "they made a statement that this is my woman", and "we come here all the time to have fun." The prosecutor then asked Officer Lagrone to clarify what he meant when he said "they". Officer Lagrone responded: "Greg made the statement and James corroborated with it. He [went] along saying, yeah, that's his woman."

■ The above testimony indicates that Officer Lagrone testified as to statements that both Gregory and James made. Moreover, even if only Gregory made a statement, it would still be admissible against James. It is well-established in Missouri that the statement of one conspirator is admissible against another under the co-conspirator exception to the hearsay rule, even when, as here, the defendants have not been charged with conspiracy. State v. Pizzella, 723 S.W.2d 384, 388 (Mo. banc 1987). Statements of a co-conspirator made after the perpetration of a crime for the purpose of concealing the crime or to prevent or defeat prosecution are admissible against the other co-conspirator under the same exception. State v. Cornman, 695 S.W.2d 443, 447 (Mo. banc 1985). Thus, Gregory's statement "that this is my woman" and "we come here all the time to have fun" is admissible as evidence of a "cover-up" of the crime if there is sufficient proof of conspiracy.

■ Before the statement of a conspirator is admissible against his fellow conspirator, there must be a showing, by evidence independent of the statement, of the existence of a conspiracy. State v. Pizzella, 723 S.W.2d 384, 388 (Mo. banc 1987). The state is not required to present conclusive evidence that a conspiracy existed when it seeks to introduce into evidence the statement of the conspirator against another conspirator. Id. Rather, a conspiracy may be established through circumstantial evidence. Id. The appearance of "acting in concert" is sufficient circumstantial evidence of the existence of a conspiracy so as to allow for the application of the co-conspirator exception to the hearsay rule. Id. at 389.

Victim testified that Gregory and James pulled up to her, as she was walking down the highway, and offered to take her to a phone. She further testified that the two brothers took her to a park where both demanded her jewelry. Victim also stated that Gregory encouraged James to "get in on this." Whereafter, both Gregory and James proceeded to rape and sodomize victim. This testimony provides a sufficient basis for a submissible fact issue on whether Gregory and James appeared to be "acting in concert" in the commission and cover-up of the two rape charges, the two sodomy charges, the second degree robbery charge and the felonious restraint charge. We conclude that victim's testimony provided sufficient evidence to support admission of Gregory's statement under the co-conspirator exception to the hearsay rule.

James next argues that separate trials were necessary to a fair determination of whether he was guilty pursuant to Rule 24.06(b)(4). James argues that his defense was hindered by Gregory's testimony, which would not have been the case if the motion to sever had been granted. However, as we have previously stated, statements of a co-conspirator made to prevent or defeat prosecution are admissible against the other co-conspirator under the co-conspirator exception to the hearsay rule. *State v. Cornman,* 695 S.W.2d 443, 447 (Mo. banc 1985). Thus, Gregory's testimony did not prohibit a fair determination of James' guilt. *Accord, State v. Whitley,* 750 S.W.2d 728, 730 (Mo.App.1988). James' sixth point is denied.

James' seventh and final point on appeal is that the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. James contends that he was denied his right to effective assistance of counsel because his attorney failed to properly advise him of his right to testify by not telling James that, should he testify, the prosecutor could only use his prior convictions as impeachment, but not as substantive evidence against him. Moreover, James argues that he was not told that the jury could be given an instruction summarizing said contention.

Appellate review of the dismissal of a 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989). We will only deem such findings and conclusions clearly erroneous if, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made. *Id.* at 696.

At the outset, we note that James' amended motion was not timely filed. James filed his *pro se* motion on November 28, 1989. The trial court appointed a public defender on January 17, 1990. On February 27, 1990, more than thirty days after the trial court appointed counsel, James filed a motion to extend time, or in the alternative, to set aside the original order of appointment and to reappoint counsel. The motion court denied James motion, but did grant James until March 21, 1990 to file his amended motion and/or request for an evidentiary hearing. On March 19, 1990, James filed an unverified amended motion and a request for an evidentiary hearing. On April 11, 1990, the motion court overruled James' request for an evidentiary hearing and entered its Findings of Fact and Conclusions of Law.

Rule 29.15 provides: "[a]ny amended motion shall be verified by movant and shall be filed within thirty days of the date counsel is appointed or the entry of appearance by counsel that is not appointed. The court may extend the time for filing the amended motion for one additional period not to exceed thirty days." In *Day v. State,* 770 S.W.2d 692 (Mo. banc 1989), our Supreme Court held that under this Rule, a movant has a maximum of sixty days from the date counsel is appointed to file an amended motion. *Id.* at 696. The request for an extension and the exercise by the trial court of its discretion to grant such extension must be made within 30 days after counsel is appointed or counsel who is not appointed enters his appearance. *Clemmons v. State,* 785 S.W.2d 524, 527 (Mo. banc 1990), *cert. denied,* —— U.S.

——, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990). If an amended motion is not timely filed, any new grounds raised therein are time barred and procedurally waived. *Sloan v. State*, 779 S.W.2d 580, 582 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990).

 Time periods begin with the appointment of the public defender's office, not when an individual attorney is designated by the public defender's office. *Ball v. State*, 775 S.W.2d 226, 227 (Mo.App.1989). Moreover, transfer of a case from one public defender's office to another due to a conflict does not affect the time limits for filing an amended motion. *Jackson v. State*, 772 S.W.2d 779, 781 (Mo.App.1989).

Here, a request for an extension of time was not filed within thirty days of the appointment of counsel. Since the request for an extension and the exercise by the trial court of its discretion to grant such an extension was not made within 30 days of counsel's appointment, we are limited to the grounds found in James' *pro se* motion.

 James' *pro se* motion alleged:

d. Trial counsel failed to properly and completely advise Movant as to his rights pertaining to the offering of his own testimony at the time of trial, specifically failing to advise Movant that, should he have testified at the time of trial, and should the prosecutor have impeached him by reference to his prior convictions, appropriate instructions of law concerning the limited use of said information, MAI–CR2d 3.58 and 3.60, could have been given to the jury. As a result of counsel's failure to advise Movant concerning the law in this regard, Movant erroneously believed that, should he testify, information concerning his prior arrests and/or convictions could be used by the jury for purposes of determining his guilt or innocence. As a result, Movant decided not to offer his testimony at trial though such testimony would have contributed greatly to his defense and to impeachment of the State's key witness [victim].

James' allegation is not sufficient to entitle him to relief, as it does not allege what his testimony would have been and how it would have aided him. *Goforth v. State*, 775 S.W.2d 231, 233 (Mo.App.1989). Moreover, James' allegation is not supported by the record. At trial, James was questioned regarding his right to testify on his own behalf. The following exchange occurred:

Q. Okay. Do you have an attorney that has been representing you throughout the proceedings here?

A. Yes.

Q. Who was that?

A. Michael Burton.

Q. Is that myself?

A. Yes.

Q. Okay. I have been your attorney ever since the time you were arrested?

A. Yes.

Q. Okay. Have we discussed your case on numerous occasions?

A. Yes.

Q. Okay. At some point in time prior to the beginning of the trial did you ever indicate to me what your wishes were about testifying?

A. Yes.

Q. What were those what was your—

A. I don't want to testify.

Q. Okay. Before the trial began, what did you initially tell me?

A. I did at first.

Q. Okay. At some point since the trial began you changed your mind; is that correct?

A. Yes.

Q. Okay. Is that after—when did you first tell me that you did not want to testify?

A. After Greg got done.

Q. When you say "after Greg got done," that's after you heard him testify this afternoon?

A. Yes.

Q. Do you know you have a right to testify if you so chose?

A. Yes.

Q. Okay. And do you know you have a right to explain what your act was?

A. Yes. Okay.

Q. Do you know the benefits of your testifying or what sort of positive things

can happen due to your testifying in court?

A. Yes.

Q. Okay. And do you know also the negatives that can happen if you testify?

A. Yes.

Q. After considerating all of those, you have decided not to testify; is that correct?

A. Yes.

The above testimony indicates that James knew he had a right to testify, and planned to do so until he heard Gregory's testimony at trial. Additionally, James admitted that he was informed of both the advantages and disadvantages of testifying. After weighing these considerations James elected not to testify. The motion court was not clearly erroneous in its determination that James was not entitled to either a hearing or post-conviction relief. James' seventh point is denied.

For the reasons stated above, the convictions and the denial of the Rule 29.15 motion for post-conviction relief are affirmed.

REINHARD, P.J., and CRANE, J., concur.