**STATE of Missouri, Plaintiff–Respondent,**

v.

**William DeJOURNETT, Defendant–Appellant.**

**William DeJOURNETT, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 16717, 18459.

Missouri Court of Appeals, Southern District, Division One.

Dec. 14, 1993.

Motion for Rehearing or Transfer Denied Jan. 5, 1994.

Marcie W. Bower, Columbia, for defendant-appellant and movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent and respondent-respondent.

SHRUM, Judge.

William DeJournett (the defendant) was convicted by a jury of second degree murder, § 565.021.1(1), RSMo 1986, armed criminal action, § 571.015, RSMo 1986, and unlawful use of a weapon, § 571.030.1(4), RSMo 1986. He was sentenced to life, 20 years, and 5 years imprisonment, respectively, with the terms to run consecutively. In Case No. 16717 he appeals from the judgment imposing the sentences. The defendant charges that the trial court committed plain error in a verdict directing instruction, committed plain error in sentencing him for both murder and unlawful use of a weapon, abused its discretion in not ordering a mistrial following a question by the prosecutor concerning the defendant's sanity, and committed plain error in submitting the pattern "reasonable doubt" instruction. We affirm.

After sentencing, DeJournett (the movant) filed a *pro se* Rule 29.15 motion seeking postconviction relief. The movant's *pro se* motion, which was not amended by his appointed postconviction counsel, was denied without an evidentiary hearing. In Case No. 18459 he appeals from that denial. We affirm.

Pursuant to Rule 29.15(*l*) the appeals were consolidated.

### CASE NO. 16717–DIRECT APPEAL

The defendant's second degree murder conviction is for killing his wife, Lillian De-Journett, on March 31, 1988, by shooting her; his armed criminal action conviction is for use of a deadly weapon in committing Lillian's murder; and his "unlawful use of a weapon" conviction is for exhibiting "in the presence of one or more persons a 30–30 rifle ... in an angry and threatening manner."

The events of March 31, 1988, culminate a history of violence by the defendant upon his wife, Lillian, a history that we recount only to the extent necessary to dispose of the issues presented.

An incident on March 2, 1988, in which the defendant exhibited guns and threatened to kill Lillian, resulted in the defendant's guns, described as a "a .410 shotgun, a single shot[,] ... a 12–gauge ... and ... a .22 semi-automatic," being taken to the Reynolds County Sheriff's Office. Ultimately those guns were retrieved from that office by David DeJournett (defendant's son). Trying to keep the guns from the defendant, David put them in the bedroom of his (David's) home. Additionally, the Reynolds County sheriff and Michael DeJournett (defendant's son) accompanied the defendant to the Farmington State Mental Hospital. The defendant remained in the hospital for three to four days but was then released.

Thereafter, on the fateful March 31, 1988, date, around 2:00 p.m., Linda DeJournett (David's wife) returned to the mobile home occupied by her and David, where she found the defendant asleep on a couch. When he awoke, the defendant told Linda he was waiting on a call from his wife, Lillian. Linda then went into her bedroom where she saw guns leaning against a dresser. Fearful that defendant would get the guns, Linda hid them behind a door.

As anticipated by the defendant, Lillian did call. She talked to both Linda and the defendant. Later, Linda met Lillian at another site and accompanied her back to the David DeJournett mobile home. After talking with defendant for some time, Lillian went to the bathroom. The defendant also walked toward the bathroom following which Linda heard a scuffle and Lillian scream for help. Lillian then came from the bathroom and she and Linda walked into the kitchen. The defendant went into the bedroom and came out with a 30–30 rifle. As he walked toward the kitchen he started to use the lever on the rifle to "cock it". Linda screamed at him to put the gun down. As the defendant raised the rifle Linda was "facing the gun." She ran from the mobile home and then heard a shot from inside. Linda then fled to the home of her father Roy Foster, which was about a quarter of a mile away, where they called the sheriff.

Inside the mobile home, officers and others found Lillian's dead body. A 30–30 rifle found on the steps of the mobile home was identified at trial by Linda as the gun that was in the defendant's hands as Linda ran from her home on March 31, 1988. The 30–30 rifle identified by Linda was owned by Roy Foster but had been in the David DeJournett bedroom for some time.

Medical evidence was that Lillian died from loss of blood caused by a "contact" gunshot wound to her back that exited her chest.

## DISCUSSION AND DECISION

*Instructional Error–Plain Error Review*

Instruction No. 12, the verdict directing instruction for unlawful use of a weapon, contained an erroneous date. It directed the jury to find the defendant guilty if "on or about the *1st day of March, 1988*," he exhibited a "*30–30 rifle* ... in an angry or threatening manner." The charged incident occurred on March 31, 1988, not March 1, 1988. The defendant avers that this "erroneous instruction could have allowed the [jury] to convict based on other incidents presented in the state's evidence where [the defendant] flourished a weapon, thereby giving the jurors a roving commission to convict on uncharged offenses."

The evidence of other "flourishing" incidents to which the defendant refers are as follows. Through testimony of Linda Cowin, David DeJournett, and Michael DeJournett,[1] the state presented evidence that on March 2, 1988, and in the fall of 1987 the defendant had threatened Lillian with weapons, variously described as "a long weapon" or a "rifle of some sort." Sheriff Barton testified that when he went to the defendant's residence on March 2, 1988, the defendant pointed two guns at him. Finally, documentary evidence showed that the defendant was charged with unlawful use of a weapon arising out of the March 2, 1988, incident.

The defendant concedes that this issue was not preserved inasmuch as he made no objection to Instruction No. 12, either at trial or in

---

1. All three are children of the defendant and Lillian DeJournett.

his motion for new trial. He requests that we examine Point I under the plain error standard of Rule 30.20.[2]

When seeking plain error review a defendant must show "manifest prejudice affecting his substantial rights" as a prerequisite to obtaining relief. *State v. Hornbuckle*, 769 S.W.2d 89, 93[2] (Mo. banc), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989); *State v. Hopkins*, 841 S.W.2d 803, 804 (Mo.App.1992). Instructional error is rarely plain error. *State v. Brokus*, 858 S.W.2d 298, 302 (Mo.App.1993). More than mere prejudice must be shown in such a case. *Id.*

For instructional error to rise to the level of plain error, the trial court must have so misdirected the jury as to cause manifest injustice or a miscarriage of justice. *State v. Parkus*, 753 S.W.2d 881, 888[13] (Mo. banc), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). An accused bears the burden of establishing manifest injustice. *State v. Cline*, 808 S.W.2d 822, 824[4] (Mo. banc 1991); *State v. Laws*, 854 S.W.2d 633, 635[2] (Mo.App.1993). "The determination of whether plain error exists must be based on a consideration of the facts and circumstances of each case." *Laws*, 854 S.W.2d at 635 (citing *Cline*, 808 S.W.2d at 824[5]). With these principles in mind we examine the defendant's Point I relied on.

Linda DeJournett's testimony provides the only eyewitness account of the events that form the basis for the charge that on March 31, 1988, the defendant exhibited a 30–30 rifle in an angry and threatening manner. She testified that on March 31, as the defendant came out of the bedroom of her home, he had a rifle in his hands and he was using the lever on the gun to cock it. He then raised the weapon and pointed it at both Linda and Lillian. Immediately, Linda fled the mobile home. Once outside she heard a gunshot from inside the mobile home. At trial Linda identified the 30–30 rifle found on the front porch of her mobile home as the gun she saw in the defendant's hands on March 31 just before she ran from the trailer.

No testimony was elicited from Linda concerning the earlier flourishing incidents—whether she was present at those events does not appear from the record. Although the 30–30 rifle used by the defendant on March 31, 1988, was in evidence (exhibit 4) and was shown to several witnesses present at the earlier incidents, no one identified exhibit 4 as the weapon exhibited by the defendant on the earlier occasions. Further, the undisputed evidence is that the Winchester 30–30 rifle used on March 31, 1988, belonged to Roy Foster, whereas the guns taken from the defendant as a result of the March 2, 1988, incident were different, specifically they were a ".410 shotgun, a single shot[,] ... a 12–gauge ... and a .22 semiautomatic."

Based upon the foregoing we conclude that the jury could not have been misled as to the date of the charged offense of unlawful use of a weapon nor did the instruction give the jury a roving commission. Instruction No. 12 focuses on a *"30–30 rifle"* as the weapon exhibited by the defendant in an angry and threatening manner. Linda DeJournett's testimony regarding the March 31, 1988, event was the only evidence in which a 30–30 rifle was identified as the weapon used. Wholly absent is any evidence that the defendant owned, had access to, or flourished a 30–30 Winchester rifle before March 31, 1988. Under the circumstances the *"30–30 rifle"* language of Instruction No. 12 focused the jury's attention to the charged offense of March 31, 1988.

Furthermore, when making a determination if there is prejudicial error in a particular instruction, we are entitled to consider the facts and all instructions together. *State v. Ward*, 745 S.W.2d 666, 670[6] (Mo. Banc 1988); *State v. Mallory*, 851 S.W.2d 46, 48 (Mo.App.1993). Here, other instructions focused the jury's attention to March 31, 1988. Specifically the instructions for first degree murder, second degree murder, and

**2.** In pertinent part, Rule 30.20 reads: "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

manslaughter each hypothesized March 31, 1988, as the date for those offenses.

■ We see little potential for the jury being misdirected sufficiently to cause a miscarriage of justice when all verdict directing instructions are read together, especially when the only evidence of unlawful use of a 30–30 rifle by the defendant related to March 31, 1988. *Mallory*, 851 S.W.2d at 48. Reading the instructions together in the light of the facts here presented, no reasonably attentive and intelligent juror could have been misled by Instruction No. 12. *State v. Livingston*, 801 S.W.2d 344, 349[5] (Mo. banc 1990).

We also consider defense counsel's failure to object to Instruction No. 12 as an indication that this jury was not so misdirected as to cause a manifest injustice. If the defect was not readily apparent to alert counsel preparing to argue his case, there is little likelihood that the jury was confused or misled. *See Livingston*, 801 S.W.2d at 349.

Finding no manifest prejudice to the defendant that affects his substantial rights, the defendant's first point fails.[3]

*Merger Question*

In Point II the defendant once again requests plain error review of an alleged trial court error. His point relied on reads:

The trial court plainly erred in accepting the jury verdict and sentencing [the defendant] to five years for unlawful use of a weapon by exhibiting a deadly weapon in an angry, or threatening manner because that conviction violated appellant's rights to be free from double jeopardy and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution in that the charged act of exhibiting the 30–30 rifle occurred just prior to and was part and parcel with the act of the charged offense of murder, and the state may not split the offense of murder into separate charges of homicide and unlawful use of a weapon.

■ As interpreted by the United States Supreme Court, the double jeopardy provision in the Fifth Amendment "protects defendants not only from successive prosecutions for the same offense after either an acquittal or a conviction, but also from multiple punishments for the same offense." *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969), overruled on other grounds by *Alabama v. Smith*, 490 U.S. 794, 802, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865, 874 (1989)). Double jeopardy analysis regarding multiple punishments is now clearly limited to determining whether cumulative punishments were intended by the legislature. *McTush*, 827 S.W.2d at 186[2] (citing *Missouri v. Hunter*, 459 U.S. 359, 366–69, 103 S.Ct. 673, 678–80, 74 L.Ed.2d 535, 542–44 (1983)).

Although the defendant asserts a double jeopardy violation in Point II, he does not develop that claim, either in his point relied on or in the argument that follows. He does not charge the trial court with violating either the successive prosecution component or the multiple punishment component of his Fifth Amendment protection. Nor does the argument portion of the defendant's brief develop a double jeopardy analysis as regards multiple punishments as outlined by

---

**3.** We have not ignored the cases cited by the defendant but have concluded that they are not authorities that support his point. First, in *Brokus*, 858 S.W.2d 298, plain error in a verdict directing instruction was found because it did not require the jury to find every fact necessary to constitute the essential elements of the offense charged. No such deficiency exists in Instruction No. 12 in this case. Second, *State v. Pope*, 733 S.W.2d 811 (Mo.App.1987), does not appear to be a case of plain error review. In any event, it is not in point. There, Pope was charged with two counts of deviate sexual intercourse. Specific acts were charged. At trial evidence of more than one act of deviate sexual intercourse was presented. The verdict director told the jury to convict if they found "the defendant had deviate sexual intercourse ..." without informing the jury of the specific act charged. It was thus prejudicially erroneous because it allowed the jury to convict of (a) the charged act, or (b) an act that was not charged. *Id.* at 812. That possibility does not exist here because Instruction No. 12 clearly guided the jury toward the only occurrence mentioned in evidence involving the 30–30 rifle, that being the March 31 incident. Finally, in *State v. Mitchell*, 704 S.W.2d 280 (Mo.App.1986), the instructional error was preserved. Plain error review was not involved.

*McTush.* Rather, defendant claims that the trial court plainly erred in sentencing him on both murder and unlawful use of a weapon because the defendant's display of the weapon in an angry and threatening manner was "part and parcel ... of the ... homicide." Continuing the defendant argues that the state "should not have been allowed to break this transaction down into two separate offenses when, in fact, it should have been charged only as a homicide."

We exercise our discretion to make a plain error review of the defendant's point as it was developed by him, but not as a double jeopardy issue.

The principal authority upon which the defendant relies and the case from which he draws the "part and parcel" language is *State v. Cook,* 560 S.W.2d 299 (Mo.App.1977). There defendant was convicted in a court trial of homicide. On appeal Cook contended that he was found guilty of felony murder, the underlying felony being exhibiting a deadly weapon in a rude, angry, or threatening manner. Cook asserted that since the information on which he was tried failed to allege the underlying felony, the court was without jurisdiction to find him guilty of felony murder. The Western District, in affirming the conviction, found that the trial court had in fact found defendant guilty of conventional second degree murder, saying:

> The salient facts disclose that no appreciable amount of time elapsed between the time defendant stuck the revolver out of the window of the car and the shooting of the victim. This being the case, defendant's display of the revolver in a "rude, angry and threatening manner" was such an integral part of the consummated homicide that it lost its separate identity. Contrary to defendant's contention, it did not constitute a separate underlying felony ... but was part and parcel of the homicide itself. In those countless homicide cases

where deadly weapons are wielded in an unconcealed manner to inflict mortal wounds there is necessarily a period of time, fleeting in some, longer in others, when the deadly weapon is displayed in a rude, angry and threatening manner in the presence of the victim in the victim's presence. The attendant physical realities of such offenses inexorably dictate this result. Exhibiting the revolver in a rude, angry and threatening manner in the instant case was of such a fleeting nature that it was a distinct part of and inseparably related to the overall physical act required to perpetrate the homicide. Common sense dictates that flourishing the weapon in the manner heretofore mentioned and killing the victim constituted a single indivisible transaction. Such being the case, no distinct or separate underlying felony existed upon which to predicate application of the second degree felony murder rule.

*Id.* at 304[4].

We have quoted at length from *Cook* to demonstrate that, whatever viability these principles may have in Missouri, they do not apply in the instant case.[4]

The "single incident transaction" or "merger" principles discussed in *Cook* find application in felony-murder cases as means of limiting application of the felony-murder rule.[5] Except for *Cook,* Missouri courts have applied merger doctrine to limit the felony-murder rule only when assault is the underlying felony. *See State v. Shock,* 68 Mo. 553 (Mo.1878); *State v. Hanes,* 729 S.W.2d 612, 617[4, 5] (Mo.App.1987). The defendant here was not convicted of felony-murder; rather, he was convicted of conventional second degree murder. *Cook* is not authority for the proposition that merger principles or the "single incident transaction" rule extends to conventional second degree murder. The de-

---

4. As authority for the "merger" principles it espoused, the *Cook* court relied solely on foreign authority, specifically *People v. Ireland,* 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580 (banc 1969); *People v. Moran,* 246 N.Y. 100, 158 N.E. 35 (1927); *State v. Branch,* 244 Or. 97, 415 P.2d 766 (banc 1966); and *State v. Essman,* 98 Ariz. 228, 403 P.2d 540 (banc 1965).

5. "The merger doctrine operates to bar application of the felony-murder rule whenever the underlying felony 'directly results in or is an integral element of the homicide.'" Robert M. Elliott, *The Merger Doctrine As A Limitation On the Felony–Murder Rule: A Balance Of Criminal Law Principles,* 13 Wake Forest L.Rev. 369, 377 (1977).

fendant cites us to no such authority nor do we find any.

■ Moreover, unlike *Cook*, here the record discloses that an appreciable amount of time elapsed between when the defendant pointed the rifle at Lillian and Linda and when he shot Lillian. The evidence was sufficient to isolate and submit to the jury two distinct and independent statutory offenses: (a) unlawful use of a weapon, and (b) conventional second degree murder. Although the time lapse between the two was relatively short, the jury could still find under the evidence that the pointing of the 30–30 rifle at Linda *and* Lillian and the shooting of Lillian constituted separate offenses. On the one hand the evidence supported a finding that the defendant exhibited the 30–30 rifle in an angry and threatening manner "in the presence of one or more persons" [one of whom was Linda who escaped], and on the other hand, it supported a finding that sufficient time elapsed to enable Linda to leave before the defendant killed Lillian.

Under these facts, even if the merger concept or "single indivisible transaction" rule discussed in *Cook* applies when something other than felony-murder is charged—a postulate that we reject—nevertheless the lapse of time required for Linda to escape from the mobile home before Lillian was shot precludes application of those principles to this case.

Finally, in this record, there is evidence to support a finding that Linda DeJournett was the victim of the unlawful use of a weapon offense, whereas Lillian DeJournett was the victim of the murder. The jury was instructed, with regard to the homicide charges, that it must find that the defendant caused the death of Lillian. The verdict directing instruction for the crime of unlawful use of a weapon did not specifically refer to either Lillian or Linda. Rather, it required the jury to find that the defendant had exhibited a rifle "in the presence of one or more persons." The "one or more persons" language comes from the statute, § 571.030.1(4). It was in that manner that the defendant was charged with the weapons offense.

Linda's testimony supports a finding that the defendant exhibited the rifle in her presence in a rude and threatening manner. Even if the merger concept or "single indivisible transaction" rule discussed in *Cook* prevents the defendant from being convicted of the weapons charge when Lillian was the victim—again a postulate that we do not accept—it does not preclude the defendant from being convicted of unlawful use of a weapon when Linda is the victim.

Under the circumstances we find no error, plain or otherwise, from the fact that the defendant was charged, convicted, and sentenced for both conventional second degree murder and unlawful use of a weapon. Point II is denied.

*Mistrial Request*

For his third point the defendant charges that the trial court abused its discretion when it did not declare a mistrial after the prosecutor asked a witness if Farmington State Mental Hospital personnel had found the defendant not to be insane. The factual background for this point follows.

After the March 2, 1988, incident, the defendant was placed in the Farmington State Mental Hospital for a short period. At trial defense counsel cross-examined Linda Cowin, daughter of defendant and Lillian, about the defendant's hospitalization.

Q. (to Linda Cowin) After the incident on March the 2nd he was taken to the state hospital in Farmington, correct?

A. Right.

Q. And you were hoping and expecting them to keep him for awhile in the hospital to try to get him under control, weren't you?

A. Yes.

Q. But they ... released him after just a few days, maybe three or four days, right?

A. Yes.

On redirect examination by the prosecutor the following occurred:

Q. Linda, they released him because they found that he was not insane, is that right?

MR. HAGER (defense counsel): I object to that, Your Honor.

**A. Yes, they did.**

The trial court sustained the objection and ordered the question and answer stricken but denied the defendant's request for a mistrial. The defendant now challenges that denial as being an abuse of trial court discretion.

 Declaring a mistrial is a drastic remedy. *State v. Feltrop,* 803 S.W.2d 1, 9[12] (Mo. banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081, 11 A.L.R.5th 1111 (1991). It should be utilized only where there is grievous error that cannot otherwise be remedied. *State v. Hill,* 808 S.W.2d 882, 887[2] (Mo.App.1991). Broad discretion in ruling on request for a mistrial is accorded a trial court because it is in the better position to determine any prejudicial effects from the alleged error. *Id.*

 A discretionary ruling is presumed to be correct and the burden of demonstrating abuse is therefore cast upon the party challenging such ruling. *State v. Leonard,* 606 S.W.2d 403, 406[1] (Mo.App.1980). Our review extends only to determining, after reviewing the entire record, whether, as a matter of law, the error was so prejudicial that its effect was not removed by the trial court's action. *Feltrop,* 803 S.W.2d at 9[13]; *Hill,* 808 S.W.2d at 887[4].

From the defendant's brief we quote his argument regarding the prejudicial effect of the trial court's ruling.

The prejudice in this case occurred by the asking of the question by the prosecutor to Ms. Cowan [sic] and Ms. Cowan's [sic] answer that, in fact, Farmington Mental Hospital had released [the defendant] within the month of the shooting because they found he was not insane. [The defendant's] mental state was clearly an issue in this case, *as to convict of second degree murder, the jury had to find that [the defendant] premeditated with regard to the murder of his wife, Lillian.* The jury made that finding. The fact that the jury was apprised that appellant was not suffering from any diminished capacity or mental impairment could have aided the jury in making this finding of premeditation, and perhaps cause them to reject either an acquittal or a conviction for involuntary manslaughter, an offense also submitted to the jury. (Emphasis ours.)

 To state the defendant's argument is to demonstrate that it has no merit. The italicized portion of the defendant's argument misstates the law. Deliberation is an essential element of first degree murder; premeditation is not an element of either first degree or second degree murder.[6] *See* §§ 565.020.1 and 565.021.1(1), RSMo.1986. Defendant was convicted of the lesser offense of murder in the second degree. Contrary to the defendant's argument, premeditation is not an essential element of this crime, nor is deliberation. *State v. Watson,* 839 S.W.2d 611, 616[10] (Mo.App.1992); § 565.021.1(1), RSMo 1986. In this situation the defendant has failed to demonstrate prejudice. Point III is denied.

*"Reasonable Doubt" Instruction*

 In his fourth point on appeal, Defendant claims the trial court plainly erred when it submitted Instruction No. 4, patterned after MAI–CR3d 302.04, which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." He contends the definition allowed the jury to convict him "based on a degree of proof that was below that required by the due process clause."

The Missouri Supreme Court has held that the "firmly convinced" language does not lower the proof required of the state in criminal cases to something less than "proof beyond a reasonable doubt." *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). In *State v. Griffin,* 848 S.W.2d 464, 469[8] (Mo. banc 1993), the court reaffirmed its holding in *Antwine* after consideration of *Cage v. Louisiana,* 498 U.S. 39,

---

6. Section 565.002(3), RSMo 1986, reads: "'Deliberation' means cool reflection for any length of time no matter how brief. . . . "

111 S.Ct. 328, 112 L.Ed.2d 339 (1990), relied on here by Defendant.[7] Point denied.

The judgment in Case No. 16717 is affirmed.

### CASE NO. 18459—POSTCONVICTION APPEAL

#### FACTS

The movant timely filed a *pro se* motion for postconviction relief pursuant to Rule 29.15. Included were allegations of inadequate assistance of counsel. Public defender counsel was appointed to represent the movant. The record reflects the following activity by appointed counsel. On April 22, 1992, an assistant state public defender entered his appearance on behalf of the movant and asked for more time to file an amended motion. On June 15, 1992, appointed counsel filed a document entitled "Statement In Lieu Of Filing An Amended Motion, And Request For The Court To Rule On The Issues Raised In Movant's Pro Se Motion." In part the motion reads:

> 3. Undersigned counsel has reviewed the record in Iron County Case Number CR558–8F and information supplied by movant, and a review of movant's trial file;
>
> 4. Undersigned counsel has investigated all allegations raised by movant in addition to those in movant's *pro se* motion and has concluded that there are no additional grounds to be raised before the court.

The motion court dismissed the motion without an evidentiary hearing and issued findings of fact and conclusions of law related to the movant's claims for relief. As part of its ruling the trial court reached the following conclusion regarding the performances of appointed counsel and the movant:

> 1. That despite the failure of counsel to file an amended Motion within the time constraints established by this Rule, Movant was not abandoned by counsel in that counsel investigated the matter and "acted to ascertain whether sufficient facts assert-

ed in the pro se motion and whether the movant included all grounds known to him." *Luleff v. State,* 807 S.W.2d 495, 498. This requirement was satisfied by counsel's June 1992 filing.

This appeal followed.

### DISCUSSION AND DECISION

The question on appeal is whether the record supports the motion court's conclusion that even though his Rule 29.15 motion was not amended the movant's appointed counsel did not abandon him under the standard established in *Luleff v. State,* 807 S.W.2d 495, 498[5–7] (Mo. banc 1991).

In pertinent part, Rule 29.15(e) reads:

> Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the [*pro se*] motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence.

In *Luleff* our supreme court held that counsel's failure to comply with Rule 29.15(e) constituted an abandonment by counsel entitling movant to appointment of new counsel and an extension of time in order to file an amended motion. 807 S.W.2d at 498[7]. The *Luleff* court based its finding of abandonment on two factors: (1) no activity on movant's behalf by postconviction counsel; and (2) absence of a record that indicated whether appointed counsel made the determinations required by Rule 29.15(e). 807 S.W.2d at 498[3, 5]. *See State v. Shields,* 862 S.W.2d 503, 506 (Mo.App.1993).

Neither of the *Luleff* factors is present in this case. The "Statement In Lieu Of Filing An Amended Motion" provides a record of motion counsel's activity on behalf of the movant. In it counsel recites that he had (a) "reviewed the record" and "trial file" of the case in which the defendant was convicted, (b) reviewed "information supplied by movant," (c) investigated "all allegations raised by movant in addition to those in movant's

---

**7.** Defendant calls our attention to *Sullivan v. Louisiana,* 508 U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), in which the court held that a constitutionally deficient instruction defining "reasonable doubt" may not be considered harmless error. Because the definition at issue in *Sullivan* was conceded by the State of Louisiana to be "essentially identical to the one held unconstitutional in *Cage,*" 508 U.S. at ——, 113 S.Ct. at 2080, 124 L.Ed.2d at 187, *Sullivan* has no bearing on this appeal.

*pro se* motion," and (d) "concluded that there [were] no additional grounds to be raised before the court." The language of the "Statement" is substantively the same as that of the affidavits that were adequate to show compliance with Rule 29.15(e) in *Shields,* 862 S.W.2d at 506, and compliance with Rule 24.035(e) in *Thurlo v. State,* 841 S.W.2d 770 (Mo.App.1992).[8]

Here, the motion court found that the standards set forth in *Luleff* were met. This finding is not clearly erroneous and is fully supported by the record. *Shields,* 862 S.W.2d at 506; *Thurlo,* 841 S.W.2d at 772.

The motion court, having determined that motion counsel complied with Rule 29.15(e) and that determination being supported by an adequate record, was not required to make further "independent" or *sua sponte* inquiry into the matter. The movant's argument to the contrary is rejected. The movant's claim that further independent inquiry by the motion court had to be made stems from his misapplication of both *Luleff* and *McDaris v. State,* 843 S.W.2d 369, 371–72, n. 1 (Mo. banc 1992). Point V is denied.

The judgment in Case No. 18459 is affirmed.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

8. The movant says *Thurlo* is distinguishable from the instant case because an affidavit was there used and not here. That argument has no merit. In postconviction cases "[t]he procedure before the trial court is governed by Rules of Civil Procedure insofar as applicable." Rule 24.-035(a); *Thurlo,* 841 S.W.2d at 772. "The signa-ture of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warrant-ed by existing law...." Rule 55.03; *Thurlo,* 841 S.W.2d at 772.