**STATE of Missouri, Plaintiff–Respondent,**

v.

**Richard F. TOLER, Defendant–Appellant.**

**Richard F. TOLER, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**Nos. 18782, 19476.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 1, 1994.

---

Raymond L. Legg, Office of the State Public Defender, Columbia, for defendant-movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

SHRUM, Chief Judge.

Following his conviction by a jury, Richard F. Toler (Toler) was sentenced to twenty years' imprisonment for the class A felony of first degree assault (§ 565.050).[1] Toler's direct appeal from that conviction is No. 18782.

After he was sentenced, Toler filed a pro se motion under Rule 29.15[2] seeking to vacate his conviction and sentence. Toler's *pro se* motion, which was not amended by his appointed postconviction counsel, was denied without an evidentiary hearing. In No. 19476, he appeals from that denial.

These appeals were consolidated per Rule 29.15(*l*).

We affirm in both cases.

---

1. All references to statutes are to RSMo 1986, unless otherwise noted.

2. All references to rules are to Missouri Rules of Court (West 1994).

*DIRECT APPEAL—NO. 18782*

### FACTS

Shortly after midnight, July 9, 1992, Earl Lee Essary was returning from a raccoon hunt in Barry County, Missouri, when he was shot in the back. His trial testimony regarding the assault includes the following.

Accompanied by his two hunting dogs, Essary was walking through the woods, headed toward his pickup truck, when he first heard gunshots behind him. He described it as sounding "like a big pistol or gun" fired five or six times. Believing that the shooter was merely trying to scare him, Essary paused briefly, then continued on his way. After crossing a fence, Essary heard a second round of shots. He turned and directed his helmet light in the direction of the shots. Thereon, he saw Toler, holding a pistol in both hands and pointing it toward Essary. Essary yelled, "Why are you shooting at me? I'm just trying to get to my truck." Toler replied, "I don't give a damn what you're doing You're not supposed to be down here.... You're about to get your ass blowed off." After again telling Toler that he was going to his truck, Essary walked on. Toler yelled, "You're going the wrong way, [A]sshole," following which Essary heard more gunfire. One shot of the third volley hit Essary in the back and he fell to the ground.

After being hit, Essary implored Toler to get help. Toler left the scene but returned in 15 minutes or so. Essary asked why Toler had shot him, to which Toler replied, "I've been having trouble with drug dealers down here." Soon after that exchange, paramedics arrived. In the presence of Toler and a paramedic, Essary accused Toler of being the shooter. Toler denied the accusation, saying he had been shooting over trees in the opposite direction from where the victim was. Essary was then removed from the scene.

Among other harm caused, the bullet that struck Essary severed his spinal column at the T–11, T–12 interspace, causing total paralysis of his lower extremities and adversely affecting organs of his lower body.

In his defense, Toler testified that on the night in question he was asleep in his trailer when he heard dogs howling. That prompted him to step out onto a porch and fire six shots from a .357 magnum pistol in a "due west" direction. He fired those shots in a direction opposite where he later found Essary and "into the tops of the trees."

After firing the six shots, Toler returned to bed and fell asleep. He was awakened later by somebody yelling for help. Toler got out of bed again, left his trailer, and entered the woods where he found the wounded Essary. He then went to his mother's home, where he telephoned for medical and law enforcement personnel. After Essary was removed, sheriff's deputies questioned Toler and then arrested him for assaulting Essary.

During a consent search of Toler's trailer, a sheriff's deputy found and seized Toler's .357 magnum pistol. It contained six empty cartridges that appeared to have been fired recently.

Toler filed a pretrial discovery motion under Rule 25.03. Rule 25.03(A)(6) requires the state, upon timely request, to disclose "[a]ny ... objects which the state intends to introduce into evidence at ... trial or which were obtained from or belong to the defendant." The state's response described pictures of Toler's house and his gun as the only objects it intended to offer in evidence.

At trial, the state produced a bloody shirt with a bullet hole in it, identified by Essary as the shirt worn by him when he was shot. Defense counsel objected immediately, saying:

"I'm going to object.... [O]n my request for disclosure, I asked for all physical evidence, and the State did not reveal that they had in their possession any items of clothing belonging to the victim."

During a colloquy at the bench, the state admitted that it had not disclosed to defense counsel that the state had the shirt in its possession. Three times during the ensuing discussion, the trial judge asked if defense counsel wanted time so that he and his client could examine the exhibit. Defense counsel declined that offer, saying, "[I]n the course of the interrogation ... we'll have a chance ... to examine it." However, he renewed his objection to the shirt exhibit "on the basis of non-disclosure." The court overruled the ob-

jection and the shirt was admitted as exhibit 2.

## DISCUSSION AND DECISION

Toler's single claim of trial court error is based on the state's alleged violation of discovery Rule 25.03. He asserts that the trial court abused its discretion in admitting Essary's shirt or, in the alternative, abused its discretion when it offered Toler no relief from the discovery violation other than in-court examination of the exhibit. Toler insists that the trial court's refusal to sanction the state for its discovery rule violation, either by refusing the evidence or continuing the trial, was fundamentally unfair "in that the shirt had a purported bullet hole which the state used to establish that [Toler] knowingly caused serious physical injury to Essary." He argues in conclusory fashion that the outcome of his trial would have been different had he been afforded the opportunity to have the shirt examined by an expert witness to determine "its probable value."

■ The object of the criminal discovery process is to afford a defendant a decent opportunity to prepare in advance of trial and to avoid surprise. *State v. Kilgore,* 771 S.W.2d 57, 66[20] (Mo. banc), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). When a party fails to comply with an appropriate discovery request, a court may impose sanctions. Rule 25.16; *State v. Luton,* 795 S.W.2d 468, 477 (Mo.App.1990). Remedies such as granting a continuance, excluding the withheld evidence, or granting other appropriate relief are among the available choices. Rule 25.16.

■ "Whether a sanction should be imposed for noncompliance is a matter that lies within the sound discretion of the trial court." *State v. Neil,* 869 S.W.2d 734, 738[6] (Mo. banc 1994). The denial of a requested sanction is an abuse of discretion only where the admission of evidence results in a fundamental unfairness to the defendant or substantively alters the outcome of the case. *Id.* "Thus, the focus of a denial of discovery is whether there is a reasonable likelihood that denial of discovery affected the result of the trial." *State v. Mease,* 842 S.W.2d 98, 108[10] (Mo. banc 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

■ Here, Toler does not show how earlier discovery of the shirt would have affected the result of the trial. Although he complains that, with earlier disclosure, "he could have retained a defense expert to help him prepare" and "determine [the shirt's] probative value," he offers no clue as to how his defense would have been differently prepared or presented. Nothing in the record or in Toler's argument suggests that a pretrial examination of the shirt by a witness with expertise in any field would have affected the outcome of his trial. The state offered no expert opinion evidence regarding the shirt; thus there was no scientific evidence for Toler to rebut. His defense that he accidentally shot Essary was unaffected by admission of the shirt.

Moreover, no other sanction, such as a continuance, was sought. Although Toler argues on appeal that a continuance request "would have been futile," that is pure speculation. Toler made no mention to the trial judge of an alleged need to have the shirt examined by a defense expert. When the trial court offered Toler and his lawyer time to examine the shirt, they declined such offer without seeking any sanction other than exclusion of the withheld evidence.

It is highly unlikely that the outcome of this case was altered or that the trial was fundamentally unfair because of the admission of the shirt. The evidence against Toler was overwhelming. *See State v. Robinson,* 832 S.W.2d 941, 945[11] (Mo.App.1992) (No prejudice from denial of requested sanction for discovery violation where evidence of guilt was overwhelming). Essary was shot while walking at night in a remote wooded area. Before being shot, he twice heard gunfire behind him. After the second volley, Essary focused his light on Toler who was pointing a pistol toward him. As Essary tried to explain that he was leaving, Toler yelled, "You're about to get your ass blowed off." When Essary continued on his way with his helmet light still burning, he was shot in the back. When Toler's pistol was seized, it had been recently fired and contained six empty cartridges. The inference is strong that Toler fired the third volley of shots, one of which struck Essary in the back.

As said in *Robinson,* 832 S.W.2d at 945[11], it is hard to see how Toler could have been prejudiced in light of such strong evidence of guilt, and it is highly unlikely that the outcome of the case was altered by the admission of Essary's shirt. We find no abuse of discretion because admitting the shirt resulted in no fundamental unfairness to Toler. Point denied.

## POSTCONVICTION APPEAL—NO. 19476

Toler timely filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. Included were allegations of inadequate assistance of counsel. On October 26, 1993, the motion court appointed the public defender as counsel to represent Toler and granted an additional thirty days to file an amended motion. The record reflects the following activity by appointed counsel. On November 12, 1993, assistant state public defender Irene Karns entered her appearance on behalf of Toler. On December 27, 1993, appointed counsel filed a document entitled "Affidavit of Counsel and Notice of Waiver of Amended Motion and Submission of Case on the Pleadings." In part, the affidavit reads:

> "[A]ppointed counsel ... having reviewed the Court's file and transcripts in the underlying criminal case ... and this postconviction file, and having also inquired of movant regarding any additional claims and facts known to him, does hereby advise the Court that she is not aware of any additional meritorious or colorable claims or facts which may be added in an amended motion on movant's behalf ... and that movant's *pro se* motion includes all claims known to movant or counsel at this time. Counsel has advised [Toler] on the claims presented in his *pro se* motion, ... and its files in the criminal and postconviction cases, and consider the case as submitted on the pleadings."

In its findings of fact and conclusions of law, the motion court acknowledged Toler's "waiver of any Amended Motion," found Toler's *pro se* claims to be refuted by the record, and denied postconviction relief without an evidentiary hearing. This appeal followed.

**3.** Rules 24.035(e) and 29.15(e) are identical.

## DISCUSSION AND DECISION

Toler charges that the motion court erred when it denied his Rule 29.15 without, *sua sponte,* making independent inquiry of both appointed counsel and Toler as to why his pro se motion was not amended. Toler argues that standards established in *Luleff v. State,* 807 S.W.2d 495, 498[5–7] (Mo. banc 1991), and procedure suggested in *McDaris v. State,* 843 S.W.2d 369, 371–72 n. 1 (Mo. banc 1992), apply here, thus requiring motion court investigation as to whether appointed counsel abandoned him. He insists that "under Missouri law postconviction counsel is not permitted to file a waiver of amended motion."

> Rule 29.15(e) provides, in pertinent part: "Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the [*pro se*] motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all grounds known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds."

In *Luleff,* the supreme court enunciated the following principles to guide an inquiry into counsel's performance under Rules 24.035(e) and 29.15(e):[3]

> "A record that does not indicate whether appointed counsel made the determinations required by *Rule 29.15(e)* creates a presumption that counsel failed to comply with the rule. Where counsel determines that filing an amended motion is not warranted, counsel should make that determination a part of the record. At such time as the motion court may proceed to rule a postconviction motion and there is no record of any activity by counsel on movant's behalf, the motion court shall make inquiry, *sua sponte,* regarding the performances of both movant and counsel."

807 S.W.2d at 498[3–5].

The "Affidavit of Counsel and Notice of Waiver of Amended Motion and Submission of Case on the Pleadings" provides a record of motion counsel's activity on behalf of To-

ler. In it counsel recites that she (a) "reviewed the Court's file and transcripts in the underlying criminal case ... and this post-conviction file," (b) "inquired of [Toler] regarding any additional claims and facts known to him," (c) "is not aware of any additional meritorious or colorable claims or facts which may be added in an amended motion," and (d) concluded that "[Toler's] *pro se* motion includes all claims known to [Toler] or counsel at this time." Despite Toler's arguments to the contrary, the language of the "Affidavit" is substantively the same as that of the writings that were adequate to show compliance with Rule 29.15(e) in *State v. DeJournett,* 868 S.W.2d 527, 536–37 (Mo. App.1993), and *State v. Shields,* 862 S.W.2d 503, 506 (Mo.App.1993), and compliance with Rule 24.035(e) in *Kinder v. State,* 867 S.W.2d 667, 670 (Mo.App.1993), and *Thurlo v. State,* 841 S.W.2d 770, 771–72 (Mo.App.1992).

■ We find that the record sufficiently demonstrates appointed counsel's compliance with Rule 29.15(e). In so concluding, we do not ignore Toler's citation to *Cameron v. State,* 863 S.W.2d 385 (Mo.App.1993), but find his reliance is misplaced. In *Cameron,* remand for *Luleff* inquiry was necessary because the record, including counsel's "notice," did not indicate that counsel had ascertained whether the *pro se* motion included all grounds for relief known to movant. 863 S.W.2d at 387[3]. Unlike the "notice" in *Cameron,* the affidavit here affirmatively recites the action by appointed counsel designed to ascertain all grounds for relief known to Toler, i.e., counsel "inquired of movant regarding any additional claims and facts known to him." *See Bonar v. State,* 880 S.W.2d 384, 386[3] (Mo.App.1994). *Cameron* is clearly factually dissimilar.

Because the record indicates that appointed counsel made the determinations required by Rule 29.15(e), the *Luleff* presumption, 807 S.W.2d at 498[3], did not arise, and *sua sponte* inquiry by the motion court was not required. Toler's claim that independent inquiry had to be made stems from his misapplication of *Luleff, McDaris,* and *Cameron.*

■ Finally, we reject, as directly contrary to the teaching of *Luleff,* Toler's argument that "postconviction counsel is not permitted to file a waiver of amended motion."

*Luleff* directs that motion counsel who determines that filing an amended motion is unwarranted shall make that determination a part of the record. 807 S.W.2d at 498[4]. *See Bonar,* 880 S.W.2d at 386[4]. Appointed counsel's notice informing the motion court of reasons for not filing an amended motion can provide a sufficient record to dispel a movant's claim of abandonment and eliminate the need for a *Luleff* inquiry. *Bonar,* 880 S.W.2d at 386[5]. *See also DeJournett,* 868 S.W.2d at 536–37; *Kinder,* 867 S.W.2d at 670; *Thurlo,* 841 S.W.2d at 771–72.

Point denied.

We affirm the judgment and sentence in No. 18782. We affirm the judgment denying postconviction relief in No. 19476.

FLANIGAN and MONTGOMERY, JJ., concur.