STATE of Missouri, Respondent,

v.

Michael J. HILL, Appellant.

Michael J. HILL, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19215, 19851.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 1995.

Judith C. LaRose, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Appellant, Michael J. Hill, guilty of sodomy, § 566.060.3, RSMo Cum. Supp.1991, in that he had deviate sexual intercourse with a six-year-old girl. The jury assessed punishment at seven years' imprisonment. The trial court entered judgment per the verdict. Appellant brings appeal 19215 from that judgment.

While appeal 19215 was pending, Appellant commenced an action per Rule 29.15[1] to vacate the judgment. After an evidentiary hearing, the motion court entered an order denying relief. Appellant brings appeal 19851 from that order.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 19215

The first of Appellant's two points relied on in this appeal avers the trial court erred in refusing to receive three letters in evidence. The second point maintains the trial court erred in denying Appellant's request for a mistrial when a witness gave an answer implying Appellant committed an uncharged crime.

Because Appellant does not challenge the sufficiency of the evidence to support the verdict, we need not recount all of the sordid details. The claims of error can be addressed by simply pointing out that the State's theory of guilt, as submitted in the verdict-directing instruction, was that during the period from September 10, 1991, through October 3, 1991, in a house on Cox Street in Joplin, Appellant placed his penis in the victim's mouth.

In discussing the assignments of error and their background, we mention ten people. The information in the transcript about some of them is vague. We identify and describe them in the ensuing paragraphs as best we can.

The victim, age 8 at time of trial (October 4–6, 1993).

Carla,[2] mother of the victim.

Brandon, a son of Carla. We deduce from the record that his father was not the victim's father, hence Brandon is only a half-brother of the victim.

Appellant, age 35 at time of trial.

Loretta Hill, Appellant's wife and a sister of Carla. Loretta testified she and Appellant had been married three years. As we understand her testimony, she is the mother of two children fathered by Appellant, and she is also the mother of two other children.

Jennifer, Jason and Joseph. Appellant testified they are his children. Inasmuch as Loretta testified she is the mother of two children fathered by Appellant, we infer she is the mother of two of these three children. The record does not reveal which two.

Omega. The victim's paternal grandmother. Omega's son, the victim's father, died in a car wreck when the victim was two. Omega resides in Ohio.

Rhonda, another sister of Carla (and of Loretta).

We gather from the record that in late summer, 1990 (a year before the sodomy), Carla, Brandon and the victim were residing in Kansas, perhaps with Rhonda and one or more of her children, although that is unclear. Carla contacted Omega and asked her to take custody of the victim. Omega did, and during the next twelve months the victim resided with Omega in Ohio.

While in Ohio with Omega, the victim wrote a letter dated January 22, 1991, to Brandon, Jennifer, Jason, Joseph and Loretta. It is one of the three letters referred to in Appellant's first point. The other two letters referred to in that point are also dated January 22, 1991, and were written by Omega. Further information about the letters appears in our discussion of Appellant's first point, *infra.*

---

**1.** Rule references are to Missouri Rules of Criminal Procedure (1994).

**2.** Carla's surname is the same as the victim's. To ensure the victim's anonymity, we refer to Carla by only her forename. We do the same in regard to other relatives of the victim except Appellant's wife, Loretta Hill.

In August, 1991, by agreement between Omega and Carla, Omega turned the victim back over to Carla. The details of the transaction are vague. Carla testified she won $800 in bingo and went to Ohio to get the victim.

Be that as it may, the record establishes that Carla, Brandon and the victim were residing in Joplin during the time the sodomy occurred. Appellant and Loretta were also residing in Joplin, occupying the house on Cox Street. It is in the "McKinley school district."

Loretta testified that Carla initially stayed at a "trailer house" in the "Stapleton school district." The victim started the 1991–92 school year attending that school. However, on September 10, 1991, the victim began attending McKinley School with Loretta's children. According to Loretta, this was because she was taking care of the victim and Brandon while Carla was at work.

The victim testified she lived in the house on Cox Street while attending school. Carla testified she (Carla) never lived on Cox Street, but "we spent the nights there." Carla explained, "My kids stayed there, but I never lived there."

In any event, the sodomy occurred at that site between September 10, 1991, and October 3, 1991.

On October 6, 1991, Carla, Brandon and the victim were in Ohio. Carla testified they went there because she wanted to see her father, who was dying, and because "I rented some furniture that this man sold."[3] On that date, Omega regained custody of the victim from Carla. Several weeks later, the victim revealed to Omega that Appellant had been sexually intimate with her. That disclosure led to the conviction which is the subject of this appeal.

Appellant's first point, as we have seen, concerns three letters dated January 22, 1991, some eight months before the sodomy. The letter written by the victim, mentioned

earlier, was marked Defendant's Exhibit B at trial. When Appellant offered it in evidence, the prosecutor objected because Appellant had not disclosed it and because it was irrelevant. Confronted by that objection, Appellant's lawyer said, "I'll withdraw the offer at this time, Judge."

Later in the trial, while Loretta was testifying, Appellant's lawyer showed her letters marked Defendant's Exhibits P and Q, respectively. Loretta identified Exhibit P as a letter from Omega. The prosecutor immediately objected because Exhibits P and Q had never been disclosed by Appellant.

The trial court ruled: "I'm not going to permit this. If you haven't provided it in discovery, I'm not going to permit this exhibit to even come in front of the jury. . . . I'm not going to permit this to be used for any purpose."

Still later in the trial, Appellant made another attempt to present Exhibits B, P and Q. Appellant's lawyer conceded he had not disclosed the exhibits to the prosecutor, but argued that Exhibit B should nonetheless be admissible because "it is in fact statements of that State's witness, not a statement of somebody else." Appellant's lawyer maintained Exhibits P and Q should be received because they were written by Omega, "a witness endorsed by the State."[4]

The prosecutor renewed his earlier objections to the three exhibits. Additionally, he objected to Exhibits P and Q because they were hearsay and irrelevant. The trial court adhered to its earlier rulings and excluded the exhibits "for all the grounds stated by the prosecutor. . . ." Amplifying its ruling, the trial court said: "So for failure to disclose, they will not be admitted, and also on the relevancy and hearsay grounds also, they will not be admitted."

Appellant asserts the exclusion of Exhibits B, P and Q was reversible error in that the exhibits were "clearly material, relevant and important to the defense, and the court con-

---

3. Although Carla's testimony is cryptic, we deduce she was ultimately extradited from Ohio to Missouri on a felony charge of "failure to return rental property."

4. The prosecutor presented Omega as a witness in a hearing in front of the trial court, outside the jury's presence, but did not present her as a witness to the jury. Appellant called Omega as one of his witnesses before the jury.

sidered no alternatives to disallowing the letters into evidence."

We have searched the portions of the transcript cited by Appellant in support of his first point and have found no clue as to how Exhibits B, P and Q were material, relevant or important to the defense.

We have likewise studied the paragraph in Appellant's motion for new trial regarding the exclusion of those exhibits. It supplies no hint as to how they were material, relevant or important to the defense.

We have also seined the argument in Appellant's brief for an inkling as to how the exhibits were material, relevant or important to the defense. The argument is confined to a discussion of what a trial court may properly do when an accused offers documents at trial which he withheld from the prosecutor during discovery. Nothing in the argument suggests how Exhibits B, P and Q were material, relevant or important to the defense.

█ Exhibit B is a one-page letter regarding the victim's past Christmas, her friends and her teacher. It expresses her love for Brandon and inquires about the other members of Loretta's household.[5]

Exhibit P is a three-page letter from Omega to Loretta.[6] It describes how the victim is adapting to Omega's home, the victim's behavior and moods, and her gratitude when things are done for her. The letter expresses Omega's willingness to return the victim to Carla if Carla reaches the point where she can give the victim a good life.

Exhibit Q is a five-page letter from Omega to Brandon. It assures him that the victim is loved and cared for in Omega's home, that the victim misses him and worries about Carla, and that the victim is doing well in school. The letter encourages Brandon to be attentive in school, explains that Carla sent him to live with Loretta because Carla was not giving him the kind of life he should have, and expresses Omega's love and concern for him.

Inasmuch as the letters antedated the sodomy by some eight months and contained no reference to any past sexual experience (or lack thereof) by the victim, we fail to see how they were relevant to any issue in this case. As reported earlier, Appellant offers no theory of relevance.

In *State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992), the accused maintained on appeal that the trial court erred in excluding evidence offered by the accused. *Id.* at 35–36. Rejecting that contention, the Supreme Court of Missouri held trial courts are given broad discretion on questions of relevancy of evidence and, without a clear showing of an abuse of that discretion, appellate courts will not interfere with the trial court's ruling. *Id.* at 36[11].

As reported earlier, the prosecutor's objections to Exhibits B, P and Q included the objection that they were irrelevant. Appellant offered no explanation of relevancy at trial and tenders none here. As no relevancy is apparent to us, we hold the trial court did not abuse its discretion in rejecting Exhibits B, P and Q on relevancy grounds. Consequently, we need not consider whether the trial court properly excluded the exhibits because Appellant failed to disclose them to the prosecutor. Appellant's first point is denied.

█ Appellant's second point arises from an incident during Carla's testimony. Appellant presented Carla as a witness and adduced testimony that she was never in the house on Cox Street in September, 1991, when Appellant "was in the next room having sexual intercourse with [the victim]." During cross-examination, this colloquy occurred:

"Q. ... Did [the victim] ever tell you about an incident with Mr. Hill on Cox Street where he made her suck white milk from his peepee?

A. No.

Q. She never told you that?

A. Not on Cox, it wasn't on Cox Street. I mean, they didn't live on Cox Street.

---

**5.** It is apparent from Exhibit Q, discussed *infra,* that Brandon was residing in Loretta's household when the victim wrote Exhibit B.

**6.** Appellant's brief erroneously states Exhibit P is a letter from Omega to Brandon and Exhibit Q is a letter from Omega to Loretta. Appellant's brief has it backwards.

Q. When this took place, when she told you that, they didn't live on Cox Street?

A. She told me—see, I don't remember what she told me, but I know—

[Prosecutor]: Wait a minute."

At that juncture, the trial court and counsel conferred at the bench. Appellant's lawyer moved the trial court to strike "the answer." The prosecutor explained to the trial court: "She ... told Pat Knapp, their own investigator, that [the victim] told her that ... he came in her mouth on Cox Street. And she knew that."

The transcript indicates the trial court thereupon examined a written report prepared by investigator Knapp and determined that the prosecutor had a good faith basis for asking the question. However, the trial court concluded: "I don't have any idea what she's going to say, and I don't think either of you do. So for that reason, for fear of a mistrial ... I'm going to sustain the objection.... [T]his witness appears to me to be so unstable that I have no idea, and you lawyers don't have any idea, what she's going to answer."

Appellant's lawyer moved for a mistrial. The trial court denied the motion, remarking: "It was a short answer and it was stopped before it was even gotten in front of this jury."

Appellant's lawyer then asked that the jury "be instructed to disregard the question and answer." The trial court inquired, "What is it you want me to tell them to disregard?" Appellant's lawyer replied, "Never mind."

Carla's testimony resumed and was completed without further objection.

Citing *State v. Shepard*, 654 S.W.2d 97 (Mo.App.W.D.1993), Appellant argues that the denial of his motion for mistrial was reversible error because the segment of Carla's testimony set forth above "improperly implied that Appellant had committed a bad act and uncharged crime at another location, and the jury could have convicted Appellant of sodomy based upon the evidence of prior bad acts."

*Shepard* is factually different from the instant case. There, an accused was on trial for burglary and stealing. He took the witness stand and disclosed on direct examination that two years earlier he pled guilty to a misdemeanor. The prosecutor stated the plea was to a "reduced charge" and presented court records to the jury showing the charge was originally a felony. *Id.* at 100. The appellate court held this constituted evidence of a crime for which the accused was never convicted, and was consequently reversible error. *Id.* at 100–01.

No such proof was adduced here. When asked whether the victim ever told her about an incident of fellatio with Appellant on Cox Street, Carla replied: "No.... Not on Cox, it wasn't on Cox Street. I mean, they didn't live on Cox Street."

The jury could have reasonably concluded that Carla was confused about the name of the street on which Appellant and Loretta lived at the time of the incident about which the victim purportedly told Carla. That likelihood is enhanced by Carla's admission that "I don't remember what she told me."

Appellant's theory of error is based on the premise that the jury understood Carla's testimony as a disclosure that the victim told her about a sex act with Appellant that occurred elsewhere than Cox Street. We decline to make that assumption. Carla's testimony is too ambiguous to support such a supposition.

The trial court apparently embraced our view. When Appellant's lawyer asked the trial court to instruct the jury to disregard "the question and answer," the trial court asked specifically what it was that Appellant's lawyer wanted the court to tell the jury to disregard. The response of Appellant's lawyer, "Never mind," suggests the testimony was so abstruse that Appellant's lawyer was either unable or unwilling to paraphrase it in such a way that the jurors would understand what they were being admonished to disregard.

Mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances. *State v. Sidebottom*, 753 S.W.2d 915, 919–20[2] (Mo. banc 1988),

*cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). Having had the opportunity to observe the incident, the trial court was in a better position than us to determine the prejudicial effect, if any, that the incident had on the jury. *State v. Anderson,* 698 S.W.2d 849, 852–53[7] (Mo. banc 1985). Appellate courts are loath to reverse judgments for failure to declare a mistrial unless they are convinced the trial court abused its discretion as a matter of law in refusing to do so. *State v. Crawford,* 619 S.W.2d 735, 740 (Mo.1981).

▆▆ Unresponsive voluntary testimony that indicates an accused was involved in offenses other than the one for which he is on trial does not mandate a mistrial. *State v. Miller,* 680 S.W.2d 253, 255[5] (Mo.App.E.D. 1984). When a State's witness volunteers an unresponsive reference to the accused's involvement in an unrelated crime, an appellate court considers the promptness of the trial court's action in directing the jury to disregard, the offensiveness of the conduct referred to, the isolated nature of the statement, and the lack of evidence that the prosecutor connived to adduce the testimony. *State v. Hall,* 829 S.W.2d 29, 31[2] (Mo.App. E.D.1992).

Here, Carla testified as a defense witness, not a State's witness. The trial court determined that the prosecutor had a good faith basis for the question. Appellant does not challenge that determination. The inquiry was brief, and the meaning of Carla's testimony is unclear. Appellant's lawyer declined the trial court's invitation to specify what Appellant's lawyer wanted the trial court to tell the jury to disregard.

Given these circumstances, we find no abuse of discretion in the trial court's denial of Appellant's motion for mistrial. Appellant's second point is denied.

Judgment affirmed.

7. Rule 29.15(e) reads: "... Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and

**Appeal 19851**

Appellant's sole claim of error in this appeal is that the motion court failed to ensure that the lawyer representing Appellant in that court complied with the mandate of Rule 29.15(e) regarding the filing of an amended motion to vacate. Appellant points out that his lawyer ("motion counsel") "waived the filing of an amended motion." As we understand Appellant, he maintains this constituted abandonment by motion counsel.

Appellant's theory of abandonment, as we grasp it, is: (a) Appellant wanted to establish in the motion court that the lawyer who represented him at trial ("defense counsel") rendered ineffective assistance, (b) the allegation of ineffective assistance in Appellant's pro se motion was inadequate in that it made only a conclusional allegation of ineffective assistance, and (c) motion counsel's failure to file an amended motion thereby extinguished Appellant's opportunity for postconviction relief.

In support of that hypothesis, Appellant cites *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991). There, the lawyer appointed to represent a prisoner in a proceeding under Rule 29.15 filed no amended motion, and the motion court ultimately denied relief without an evidentiary hearing. *Id.* at 496. The Supreme Court of Missouri held that a record which does not indicate whether appointed counsel made the determinations required by Rule 29.15(e) [7] creates a presumption that counsel failed to comply with the rule. *Id.* at 498[3]. Where counsel determines that filing an amended motion is not warranted, counsel should make that determination a part of the record. *Id.* at 498[4]. When the motion court rules on a postconviction motion and there is no record of any activity by counsel on the prisoner's behalf, the motion court shall make inquiry, *sua sponte,* regarding the performances of both the prisoner and counsel. *Id.* at 498[5].

▆▆ The facts in the instant case are strikingly different from those in *Luleff.* Here,

sentence. If the motion does not assert sufficient facts or include all grounds known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds...."

approximately two months before the evidentiary hearing, motion counsel filed an affidavit similar to those in *State v. Toler,* 889 S.W.2d 158, 162 (Mo.App.S.D.1994), and *Bonar v. State,* 880 S.W.2d 384, 385 (Mo.App. W.D.1994), explaining that after inquiring of Appellant, counsel was unaware of any additional grounds for relief available to Appellant.

On a later date, but prior to the evidentiary hearing, motion counsel went to the correctional facility where Appellant was incarcerated and took a videotape deposition of him.

At the outset of the evidentiary hearing, motion counsel discussed the pro se motion with the motion court, pointing out the claims of ineffective assistance toward which the evidence would be directed. Motion counsel then offered the videotape deposition of Appellant in evidence, and the motion court received it. A transcription of the deposition is in the record, covering 31 pages. In the deposition, Appellant testifies about various instances where, according to him, defense counsel rendered ineffective assistance.

Additionally, motion counsel called defense counsel as a witness in the motion court and questioned him about sundry aspects of his representation of Appellant in the trial court.

In accordance with Rule 29.15(i), the motion court issued findings of fact and conclusions of law. Appellant's brief identifies no claim of ineffective assistance that the motion court failed to address and sets forth no ground for relief that motion counsel should have raised in an amended motion.

Thus, unlike *Luleff* where there was no record of any activity by appointed counsel on the prisoner's behalf, the record here demonstrates diligent effort by motion counsel on Appellant's behalf. Despite that, Appellant insists the motion court should have given him an opportunity to personally confirm to the motion court that motion counsel had complied with Rule 29.15(e). In support of that argument, Appellant cites *McDaris v. State,* 843 S.W.2d 369, 371–72 n. 1 (Mo. banc 1992).

An identical contention based on *McDaris* was made by the prisoner in *Toler,* 889

S.W.2d at 162. There, the lawyer appointed to represent the prisoner in a proceeding under Rule 29.15 filed no amended motion, but did file an affidavit stating that after inquiring of the prisoner, the lawyer was unaware of any additional claim for relief. The motion court denied relief without an evidentiary hearing. On appeal, this Court held the affidavit of the prisoner's lawyer was sufficient to demonstrate compliance with Rule 29.15(e). *Id.* at 163[5]. That being so, the *Luleff* presumption of noncompliance with Rule 29.15(e) never arose, hence *sua sponte* inquiry by the motion court regarding the lawyer's performance was unnecessary. *Id.* at 163.

Consistent with *Toler,* we hold motion counsel's affidavit here demonstrated compliance with Rule 29.15(e), thus the *Luleff* presumption of noncompliance never arose. Furthermore, as there was substantial activity by motion counsel on Appellant's behalf in assembling and presenting evidence to the motion court, the duty imposed on motion courts by *Luleff* to make *sua sponte* inquiry regarding the performance of counsel, which is triggered when there is no record of any activity by counsel, was never triggered here. Appellant's point relied on is meritless.

The order denying postconviction relief is affirmed.

PREWITT, P.J., and SHRUM, C.J., concur.